# EXHIBIT J

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br><br>COUNTY OF LEXINGTON | IN THE COURT OF COMMON PLEAS |
| South Carolina Freedom Caucus,<br><br>    Plaintiff,<br><br>            v.<br><br>Lexington County School District One, and Gerrita L. Postlewait, in her official capacity as Superintendent of the Lexington County School District One,<br><br>    Defendants. | Civil Action No. _____<br><br><br><br>**SUMMONS**<br><br>**(Jury Trial Requested)** |

**TO THE DEFENDANTS ABOVE-NAMED:**

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, a copy of which is hereby served on you, and to serve a copy of your Answer to said Complaint upon the subscribers at 557 East Bay St. #22251, Charleston, SC 29413, within thirty days after service hereof, exclusive of the day of such service, and if you fail to answer the Complaint within the time aforesaid, judgment by default will be rendered against you for the relief demanded in said Complaint.

Dated: November 16, 2022

                                                *s/ Christopher Mills*
                                                Christopher Mills
                                                (SC Bar No. 101050)
                                                Spero Law LLC
                                                557 East Bay Street #22251
                                                Charleston, South Carolina 29413
                                                Telephone: (843) 606-0640
                                                cmills@spero.law

                              *Attorney for Plaintiff*

ELECTRONICALLY FILED - 2022 Nov 16 10:43 AM - LEXINGTON - COMMON PLEAS - CASE#2022CP3203931

# EXHIBIT J

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br><br>COUNTY OF LEXINGTON<br><br>SOUTH CAROLINA FREEDOM CAUCUS,<br><br>  Plaintiff,<br><br>  *v.*<br><br>LEXINGTON COUNTY SCHOOL DISTRICT ONE, and GERRITA L. POSTLEWAIT, in her official capacity as Superintendent of the Lexington County School District One,<br><br>  Defendants. | IN THE COURT OF COMMON PLEAS<br><br>Civil Action No. _____<br><br>**COMPLAINT**<br><br>**(Jury Trial Requested)** |

1.  This action challenges Lexington County School District One's refusal to comply with the duly enacted law of the State of South Carolina preventing schools from indoctrinating students in the critical race theory-derived idea that individuals should be judged by the color of their skin.

2.  Under South Carolina law, schools may not use state monies to indoctrinate students or staff in any of the following Critical Race Theory-Derived Ideas: "(1) one race or sex is inherently superior to another race or sex; (2) an individual, by virtue of his race or sex, is inherently racist, sexist, or oppressive, whether consciously or unconsciously; (3) an individual should be discriminated against or receive adverse treatment solely or partly because of his race or sex; (4) an individual's moral standing or worth is necessarily determined by his race or sex; (5) an individual, by virtue of his race or sex, bears responsibility for actions committed in the past by other members of the same race or sex; (6) an individual should feel discomfort, guilt, anguish, or any other form of psychological distress on account of his race or sex; (7) meritocracy or traits such as a hard work ethic are racist or sexist, or were created by members of a particular race to oppress members of

ELECTRONICALLY FILED - 2022 Nov 16 10:43 AM - LEXINGTON - COMMON PLEAS - CASE#2022CP3203931

# EXHIBIT J

another race; and (8) fault, blame, or bias should be assigned to a race or sex, or to members of a race or sex because of their race or sex." 2022-2023 Appropriations Bill H. 5150, Part 1B Section 1, H630, § 1.93.

3. What this law prohibits, in essence, is using state money to indoctrinate teachers and students in the theories of racial primacy, which "reject the philosophy of 'colorblindness'" as inherently racist.[1]

4. Those theories contradict America's central promise, dating from the Declaration of Independence's "self-evident" truth that "that all men are created equal": "Our Constitution is color-blind, and neither knows nor tolerates classes among citizens." *Plessy v. Ferguson*, 163 U.S. 537, 559 (1896) (Harlan, J., dissenting).

5. Though one branch of the racial primacy theory began in the legal academy under the term "Critical Race Theory," the theory's adherents have rebranded the idea in the K-12 education context and elsewhere as antiracism, culturally responsive teaching, or diversity, equity, and inclusion. It is all the same pernicious, racist nonsense. Schools that adhere to these theories teach that students are oppressors or oppressed based on skin color and sex. They reject the notion of "colorblindness," labeling it a manifestation of white supremacy. They engage in segregation of classes, discipline, and activities. All this cements racial castes within schools, leading impressionable young students to resent each other because of the color of their skin.

6. Despite South Carolina law's prohibition on indoctrinating students with Critical Race Theory-Derived Ideas, Lexington County School District One continues to develop and use curriculum that promotes these beliefs. Through these curricula, along with mandatory teacher and staff training in racist concepts, the School District is violating state law as it forces racist ideology on young children.

---

[1] J. Fortin, *Critical Race Theory: A Brief History*, N.Y. Times (Nov. 8, 2021), https://www.nytimes.com/article/what-is-critical-race-theory.html.

ELECTRONICALLY FILED - 2022 Nov 16 10:43 AM - LEXINGTON - COMMON PLEAS - CASE#2022CP3203931

# EXHIBIT J

7.  The School District's enabler is EL Education, which supplies curricula and professional training for multiple schools in the District. EL Education is obsessed with race. According to its website, "antiracism" is "at the core" of its curriculum. Its trainers instruct teachers to "[u]se your understanding of racism and CRT [critical race theory] to leverage equity in your role through a culturally responsive lens," including "[d]ecolonizing the curriculum." An EL Education professional development specialist who recently came to the School District explained that "decolonizing" means to "decenter[] whiteness."

8.  In short, the School District stands in violation of state law prohibiting the indoctrination of teachers and students with racist ideologies using state funds. The School District is also infringing South Carolina's guarantee of equal treatment under the law and laws that protect students from discrimination. This Court should enjoin the School District's ongoing legal violations, which harm impressionable students who the School District would turn against each other based on their race.

## PARTIES

9.  Plaintiff South Carolina Freedom Caucus is a legislative special interest caucus comprised of members of the South Carolina House of Representatives. The Caucus seeks to promote conservative principles like the rule of law and equal protection for all citizens under the law. The Caucus has a significant interest in ensuring that laws enacted by the General Assembly are given effect. Members of the Caucus include Rep. Adam Morgan, Rep. RJ May, Rep. Josiah Magnuson, Rep. Mike Burns, Rep. Bill Chumley, Rep. Bobby Cox, Rep. Patrick Haddon, Rep. Stewart Jones, Rep. Steven Long, Rep. Ryan McCabe, Rep. Alan Morgan, Rep. Melissa Oremus, and Rep. Ashley Trantham.

ELECTRONICALLY FILED - 2022 Nov 16 10:43 AM - LEXINGTON - COMMON PLEAS - CASE#2022CP3203931

# EXHIBIT J

10. Defendant Lexington County School District One is a public school district in Lexington County, South Carolina. Its headquarters are located at 100 Tarrar Springs Rd., Lexington, SC 29072.

11. Defendant Gerrita L. Postlewait is sued in her official capacity as the Superintendent of Lexington County School District One.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this matter pursuant to S.C. Const. Art. V, § 11 and S.C. Code Ann. § 14-5-350.

13. This Court has personal jurisdiction over Defendants because the Defendants reside or do business in Lexington County, South Carolina.

14. Venue is proper in this circuit under South Carolina Code § 15-7-30 because the Defendants reside or do business in Lexington County, South Carolina, and the acts and omissions that are the subject of this action occurred in Lexington County, South Carolina.

## FACTS

15. EL Education is a company that seeks "to transform public schools and districts" to provide "equitable outcomes" through a language arts curriculum, professional development, and school design services.[2]

16. EL Education lists Meadow Glenn Elementary, Meadow Glenn Middle, Lakeside Middle School, and River Bluff High School in Lexington County School District One as "partners."[3]

17. EL Education's partners "implement the top-rated EL Education K-8 Language Arts curriculum."[4]

---

[2] EL Education, Our Approach, https://eleducation.org/who-we-are/our-approach (visited Nov. 15, 2022).
[3] EL Election, Our Partners, https://eleducation.org/who-we-are/our-partners (visited Nov. 15, 2022).
[4] EL Education, District Partnerships, https://eleducation.org/what-we-offer/curriculum-services/

ELECTRONICALLY FILED - 2022 Nov 16 10:43 AM - LEXINGTON - COMMON PLEAS - CASE#2022CP3203931

# EXHIBIT J

18. According to its website describing that curriculum, EL Education is an "antiracist organization" that "built our curriculum with equity in mind": "We must iterate on our curriculum with antiracism at the core." Thus, EL Education trumpets that "[t]he majority of core texts in grades 6-8 were authored by people of color" and "[a] majority of texts in the EL Education curriculum feature central characters who are people of color" (66%). "To align with" EL Education's "27-year history . . . rooted in beliefs about equity our vision and values," "future iterations of our curriculum will more explicitly empower students to be antiracist." Likewise, its curriculum instructs teachers "to more explicitly be antiracist and teach antiracism": "teachers must be empowered to recognize bias and support students to go beyond awareness to disruption."[5]

19. EL Education views "education as a powerful engine for disrupting structural racism." One "pillar[] of educational equity" promoted by its curriculum is "[e]xplicit anti-racist discussion, practice, and action." According to EL Education, "Anti-racism means taking an explicit stand against racism. We subscribe to author Ibram X. Kendi's definition: 'One either allows racial inequities to persevere, as a racist, or confronts racial inequities, as an antiracist. There is no in-between safe space of "not racist."'"[6]

20. In Kendi's view, "The most threatening racist movement is . . . the regular American's drive for a 'race-neutral' [society]." I. Kendi, *How To Be an Antiracist* 20 (2019). He believes that "[t]he only remedy to racist discrimination is antiracist discrimination. The only remedy to past discrimination is present discrimination. The only remedy to present discrimination is future discrimination." *Id.* at 19.

---

district-partnerships (visited Nov. 15, 2022).
[5] EL Education, How does the EL Education K-8 Language Arts curriculum address topics of race, racism, antiracism and cultural proficiency?, https://perma.cc/A9R3-J6MF.
[6] EL Education, Our Commitment to Equity and Antiracism, https://perma.cc/SGJ7-TG2C.

5

ELECTRONICALLY FILED - 2022 Nov 16 10:43 AM - LEXINGTON - COMMON PLEAS - CASE#2022CP3203931

21. For instance, EL Education's eighth grade curriculum assigns Harper Lee's *To Kill a Mockingbird* primarily to criticize the book for "center[ing] on the white experience of anti-black racism and present[ing] African American characters with limited agency." The assignment "highly recommend[s] supplementing this reading with additional texts centering the voices of Black authors and characters and explicitly naming the problematic nature of the narrative in your teaching." Teachers and students are told to "consider how the story could be reimagined to center the Black experience and the intersectionality of experiences and social identities."[7]

22. Charlotte-Mecklenburg Schools recently chose EL Education's curriculum "because across all of its modules and topics they begin to address issues of social justice, racism, anti-racism and cultural proficiency."[8]

23. Beyond curricular indoctrination in critical race theory, EL Education also indoctrinates schoolteachers. In EL Education's view, "We are at a critical moment in time to actualize education . . . as an engine for equity." "[T]eacher professional learning for equity must" "include centering it on content related to equity and critical pedagogy."[9]

24. As one example, a December 2020 presentation to Ohio educators by EL Education's Director of Partnerships, a self-proclaimed "Critical Race Theory (CRT) Scholar," focused on antiracism and critical race theory. The presentation called for educators to be anti-racist in "your PERSONAL and PROFESSIONAL lives" and "[u]se your understanding of racism and CRT to leverage equity in your role through a culturally responsive lens," including "[d]ecolonizing the curriculum." "[O]ne of the

---

[7] EL Education, Considerations for Cultural Responsiveness, https://perma.cc/AJ4B-7A7U.
[8] A. Helms, WFAE, CMS Anti-Racist Reading Curriculum Faces Changes For Remote Instruction, https://www.wfae.org/education/2020-08-21/cms-anti-racist-reading-curriculum-faces-changes-for-remote-instruction (Aug. 21, 2020).
[9] EL Education, Teaching for Equity and Deeper Learning: How Does Professional Learning Transfer to Teachers' Practice and Influence Students' Experiences?, https://perma.cc/UW9X-8E3G.

first elements of understanding CRITICAL RACE THEORY," according to the presentation, is "[c]entering the LIVED EXPERIENCES of BIPOC (BLACK, INDIGENOUS PEOPLE OF COLOR)" and "LGBTQ+ communities." Quoting CRT proponent Ta-Nahisi Coates, the presentation tells educators to "[f]orget about intentions": "ignore the head and keep your eyes on the body." Accordingly, "[b]eing anti-racist" is different from being "not racist"; anti-racists must be obsessed with race. For instance, to be anti-racist, the presentation requires teachers to acknowledge that "whites benefit unfairly from structural racism." A "key point" of the presentation was that "CRT trainings are essential for school leaders, teachers and staff."[10]

25. In September 2022, an EL Education professional development specialist traveled to EL Education schools in Lexington County School District One to provide training.

26. Echoing the Ohio presentation, the specialist described her current focus as "decolon[izing] schools," explaining that in education, "decolonizing" means "decentering whiteness, thinking about equity, and thinking about antiracism."

27. The specialist explained that "[i]t's really easy for us to say 'we want to increase test scores,'" but "whose test scores? Equally?" Instead of equal opportunities, what she was "really focused on" in school partnerships was "achieving equitable outcomes," such as "[t]rying to get more students of color into AP classes." The specialist said that "we know that state tests are inequitable."

28. The specialist highlighted school staff "crew" meetings, which are mandated by EL Education and ask teachers "what aspects of my identity are visible" and "how do those show up in my classroom." These questions are intended to "trickle-

---

[10] C. Belle, Committing to Culturally Responsive and Anti-Racist Leadership Practices to Improve Equitable Outcomes for All Students, https://perma.cc/Q824-5P5J.

down" to student "crew" classes, which are daily, 45-minute meetings with the same group of students to discuss non-academic topics.[11]

29. In August 2022, an EL Education trainer went to Lakeside Middle School to provide training to faculty and staff, specifically about the curriculum for grades six through eight.

30. According to the trainer, "[w]e are working on a curriculum" that "is inclusive of culturally relevant teaching." The trainer explained that "[s]ome of the topics that we explore" "go against mainstream teaching."

31. For instance, the curriculum promotes "counter-narrative[s] to some of the mainstream beliefs." So "every time you read the Constitution, you're going to read a counter-narrative that is by some person of color" that "counters" the statement. "The law might say all men are created," but a counter-narrative would be required.

32. According to the trainer, the curriculum's reception "[d]epends on what kind of teacher you are: if you are a teacher who celebrates diverse cultures, then you would be open" to the curriculum.

33. Training for teachers involves demanding that they "tell [the trainer] about your privileges" and "what parts of your identity are privileged."

34. The trainer emphasized that "We have some people who are willing to be allies, and some people who are willing to be co-conspirators." An "ally" offers general support, while a "co-conspirator" says (in the trainer's words) "I'm willing to do this work in my classroom even if I get in trouble." The trainer placed this discussion around South Carolina policies prohibiting teaching racist ideologies in schools.

---

[11] *See* EL Education, Elements of a Crew Meeting, https://eleducation.org/resources/elements-of-a-crew-meeting (visited Nov. 15, 2022).

**EXHIBIT J**

35.     In a publication, the trainer has written that "pedagogies and assessments that are culturally responsive [are] about helping both teachers and students to develop a critical consciousness through which they challenge the status quo of the current social order."[12]

## FIRST CAUSE OF ACTION
## Violation of H. 5150

36.     The allegations of the above paragraphs are incorporated into this cause of action.

37.     H. 5150 prohibits Defendants from using state monies to indoctrinate students or teachers in Critical Race Theory-Derived Ideas.

38.     Defendants are training teachers in Critical Race Theory-Derived Ideas, developing curriculum and lesson plans for students based on those ideas, and otherwise disregarding the strictures of H. 5150.

39.     Defendants' failure to adhere to H. 5150 is *ultra vires* and should be enjoined by this Court.

## SECOND CAUSE OF ACTION
## Constitutional Right to Equal Protection

40.     To the extent they are not inconsistent with this cause of action, the allegations of the above paragraphs are incorporated into this cause of action.

41.     Article I, section 3 of S.C. Constitution provides: "The privileges and immunities of citizens of this State and of the United States under this Constitution

---

[12] G. Sachs, T. Sullivan, et al., *Developing Culturally Relevant Literacy Assessments for Bahamian Children*, Int'l J. of Progressive Educ., Vol. 14 No. 1, at 144 (2018).

ELECTRONICALLY FILED - 2022 Nov 16 10:43 AM - LEXINGTON - COMMON PLEAS - CASE#2022CP3203931

shall not be abridged, nor shall any person be deprived of life, liberty, or property without due process of law, nor shall any person be denied the equal protection of the laws."

42. South Carolina's guarantee of equality under the law includes a promise that similarly-situated public school students will be treated the same regardless of their race.

43. By developing professional training, curricula, and lesson plans around Critical Race Theory-Derived Ideas and forcing students and teachers to participate, Defendants have engaged in impermissible racial stereotyping, differential treatment based on race, and promotion of a racially hostile environment. These actions discriminate based on race and therefore violate equal protection.

### THIRD CAUSE OF ACTION
### Violation of S.C. Code Ann. § 59-63-130

44. To the extent they are not inconsistent with this cause of action, the allegations of the above paragraphs are incorporated into this cause of action.

45. Under South Carolina's Safe School Climate Act, "[a] person may not engage in" "harassment, intimidation, or bullying," which includes an act "that is reasonably perceived to have the effect of" "harming a student physically or emotionally" or "insulting or demeaning a student or group of students causing substantial disruption in, or substantial interference with, the orderly operation of the school." S.C. Code Ann. §§ 59-63-120, -130.

46. By developing curricula and lesson plans around Critical Race Theory-Derived Ideas, such as students being oppressors based on their skin color,

EXHIBIT J

Defendants have harmed and demeaned students. They have also caused disruption to the orderly operation of schools.

## FOURTH CAUSE OF ACTION
### Violation of S.C. Code Ann. § 59-63-40

47.     To the extent they are not inconsistent with this cause of action, the allegations of the above paragraphs are incorporated into this cause of action.

48.     Under S.C. Code Ann. § 59-63-40, no student may "be excluded from any public school in the State on account of race, creed, color or national origin."

49.     By developing curricula and lesson plans around Critical Race Theory-Derived Ideas, Defendants are *de facto* excluding students from schools based on their race.

**WHEREFORE**, Plaintiff requests that judgment be entered against Defendants: (1) DECLARING that Defendants have violated H. 5150, the South Carolina Constitution, S.C. Code Ann. § 59-63-130, and S.C. Code Ann. § 59-63-40, (2) ENJOINING Defendants from continued violations, (3) AWARDING Plaintiff its attorneys' fees and costs; and (4) GRANTING other relief that the Court may deem just, proper, or equitable.

ELECTRONICALLY FILED - 2022 Nov 16 10:43 AM - LEXINGTON - COMMON PLEAS - CASE#2022CP3203931

# EXHIBIT J

Dated: November 16, 2022

                                             Respectfully submitted,

                                             *s/ Christopher Mills*
                                             CHRISTOPHER MILLS
                                             (SC Bar No. 101050)
                                             Spero Law LLC
                                             557 East Bay Street #22251
                                             Charleston, South Carolina 29413
                                             Telephone: (843) 606-0640
                                             cmills@spero.law

                                         *Attorney for Plaintiff*

ELECTRONICALLY FILED - 2022 Nov 16 10:43 AM - LEXINGTON - COMMON PLEAS - CASE#2022CP3203931