## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## ANDERSON DIVISION

PICKENS COUNTY BRANCH OF THE NAACP;

REBECCA TURNER and BRANDON TURNER, on
behalf of minor children J.T. and G.T.;

SUSANNA ASHTON and PETER LAURENCE on
behalf of minor children H.L. and C.L.;

REBA KRUSE and DERRICK KRUSE on behalf of
minor children S.K. and R.K.;

        *Plaintiffs*,

    v.

SCHOOL DISTRICT OF PICKENS COUNTY;

        *Defendant*.

Case No. 8:23-cv-01736-BHH

### Plaintiffs' Opposition to Defendant's Motion to Dismiss

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

LEGAL STANDARD..............................................................................................3

ARGUMENT ...........................................................................................................4

    I.      The Court has jurisdiction to resolve this action. ..............................................4

        A.     Plaintiffs have standing to challenge the removal of *Stamped: Racism,*
             *Antiracism, and You* from District classrooms and libraries. ..........5

           1.     Plaintiffs' curricular injury is redressable.......................................8

           2.     Even if the Court treats Plaintiffs' Complaint as alleging a future
               injury, Plaintiffs have standing. ......................................................9

        B.     Plaintiffs' claims are not moot.................................................................12

           1.     The District's restriction on access to *Stamped* still infringes on
               Plaintiffs' First Amendment rights. ...............................................12

            2.     The District has not met its *formidable burden* of showing that it is
               *absolutely clear* that the challenged conduct will not recur. .........13

    II.     Plaintiffs state a claim upon which relief may be granted. .............................15

        A.     Plaintiffs plausibly allege that the District's restrictions on students'
             access to *Stamped* violates the First Amendment.........................15

           1.     Plaintiffs plausibly allege that Defendant's restrictions on *Stamped*
               implicate their First Amendment rights. .........................................16

            2.     Plaintiffs plausibly allege that the District restricted student access
               to *Stamped* because of the Board's political and ideological
               opposition to the book.....................................................................17

           3.     The District's basis for removing *Stamped* does not satisfy First
               Amendment scrutiny.......................................................................20

         B.     The District's arguments against First Amendment scrutiny are unavailing.
             .......................................................................................................23

           1.     A decision is not "reasonably related to a pedagogical interest"
               simply because it relates to curricula.............................................23

2.    This case is not controlled by *Boring* or any other public employee speech case....................................................................23

CONCLUSION...............................................................................................................25

## INTRODUCTION

Plaintiffs allege that on September 26, 2022, the School District of Pickens County ("SDPC," the "District") removed *Stamped: Racism, Antiracism, and You* from its libraries and classrooms because of the ideas contained in the book. Specifically, Plaintiffs allege that the District's Board of Trustees voted unanimously to remove the book because of Board members' political and ideological opposition to *Stamped*'s views on racism in the United States. Plaintiffs further allege that the Board *ignored* evidence of the book's pedagogically appropriate use in the classroom and that its decision was not motivated by a concern about the book's educational suitability. Based on these allegations, Plaintiffs claim that the District's actions injured their First Amendment right to access *Stamped* in their school libraries and First Amendment right to receive information in the classroom.

In moving to dismiss, the District raises two jurisdictional arguments under Fed. R. Civ. P. 12(b)(1) and challenges the sufficiency of Plaintiffs' Complaint under Fed. R. Civ. P. 12(b)(6).

Under Rule 12(b)(1), the District argues that Plaintiffs (1) lack standing to challenge the library removal because they fail to allege specific, concrete plans to check out *Stamped* and (2) lack standing to challenge the classroom removal because the District's curricular prohibition will not harm Plaintiffs because, given the book's "verifiable factual errors, omissions, and distortions," no teacher would ever assign *Stamped* anyway. Both arguments fail. Plaintiffs assert that removal of *Stamped* from their libraries causes an actual, present, and continuous injury-in-fact to their First Amendment right of access, not a future harm. But even if Plaintiffs' injuries are construed as future harms, they—unlike the remote and speculative harms alleged in *Lujan* and *Doe*—are sufficiently certain to establish standing. The District's argument against Plaintiffs' curricular harm is even weaker. Plaintiffs Turner and Laurence have sworn that their children are enrolled in the same English III Honors course that, until the parental challenge and the District's removal decision, assigned *Stamped* as a classroom instructional material. Though

the District apparently disputes that fact, Rule 12(b)(1) requires that the Court evaluate standing on the facts asserted by Plaintiffs, not based on declarations from an unendorsed blind expert whose conclusion conflicts with the undisputed fact that *Stamped* was challenged *because it was being used in the classroom*.

Under Rule 12(b)(6), the District argues that Plaintiffs fail to state a claim because its removal decision was based on a legitimate basis—to protect students from *Stamped*'s "factual and historical inaccuracies"—and because the District has unchecked authority to set curricula. But again, the District cannot rewrite Plaintiffs' Complaint and then argue for dismissal. Plaintiffs specifically allege their Complaint that the Board's ideological opposition to the book, and *not* its educational suitability, drove the District's decision to remove *Stamped*. Those facts, not the post hoc explanation the District has manufactured during litigation, control the Court's evaluation of Defendant's Rule 12(b)(6) motion. Because Plaintiffs' allegations assert a cognizable violation of the First Amendment under *Pico* and its progeny, the District's Rule 12(b)(6) argument against its library removal must be denied.

The District's curricular argument fares no better. The District's argument for unbridled curricular authority ignores well established Supreme Court precedent and relies on a distorted reading of *Boring v. Buncombe Cnty. Bd. of Educ.*, 136 F.3d 364 (4th Cir. 1998), a case addressing public-employee speech. But as the Fifth and Ninth Circuits have acknowledged, a student's First Amendment right to receive information (*i.e.*, a student's right to be free *from* curricular censorship) is analytically distinct from a teacher's First Amendment right to decide what they teach. Though the school district sets the curriculum, it can only prohibit the use of specific instructional materials if the prohibition is reasonably related to a legitimate pedagogical interest. *See, e.g.*, *Arce v. Douglas*, 793 F.3d 968, 982-83 (9th Cir. 2015) (applying the Supreme Court's test from *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 273 (1988)); *Virgil v. Sch. Bd. of Columbia Cty., Fla.*, 862 F.2d 1517, 1521-25 (11th Cir. 1989) (same); *Pratt v. Indep. Sch. Dist. No. 831, Forest Lake, Minn.*, 670 F.2d 771, 776 (8th Cir. 1982).

2

In sum: Defendant's Motion to Dismiss rests on misstatements of law, mischaracterizations of Plaintiffs' Complaint, and inappropriate consideration of the Defendant's own evidence. Because Plaintiffs plausibly allege that Defendant SDPC violated their First Amendment rights by removing *Stamped: Racism, Antiracism, and You* from District libraries and prohibiting the book's use in the classroom, Defendant's motion should be denied.

## LEGAL STANDARD

A court should grant dismissal under Rule 12(b)(1) only where the jurisdictional allegations are "clearly . . . immaterial, made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682-83 (1946). Moreover, "when the jurisdictional facts and the facts central to a . . . claim are inextricably intertwined, the trial court should ordinarily assume jurisdiction and proceed to the intertwined merits issues." *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009). "In questions concerning standing, the Fourth Circuit "accept[s] all allegations in the complaint as true and construe[s] those allegations 'in the light most favorable to the plaintiff'"*Buscemi v. Bell*, 964 F.3d 252, 258 (4th Cir. 2020) (citations omitted); *U.S. v. Phillips*, 883 F.3d 399, 405 (4th Cir. 2018); *see also Resnick v. KrunchCash, LLC*, __ F.4th __, 2022 WL 1597450, at *4 (11th Cir. 2022) ("To strip a district court of subject matter jurisdiction, a plaintiff's federal claim must have no plausible foundation or the court must conclude that a prior Supreme Court decision clearly forecloses the claim."). In considering a Rule 12(b)(1) motion to dismiss, the Court may consider evidence outside the pleadings. *Richmond, Fredericksburg & Potomac R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991).

A Rule 12(b)(6) motion "tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or applicability of defenses." *Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In ruling on a motion to dismiss, the Court must accept all factual allegations in the complaint as true and dismiss the case only where, "after accepting all well-pleaded allegations in the plaintiff's

complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Martin v. Duffy*, 858 F.3d 239, 248 (4th Cir. 2017) (citations omitted). This is particularly true where the complaint involves allegations of civil rights violations, as the Court must be "'especially solicitous' of the wrongs alleged." *Harrison v. U.S. Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988) (citation omitted). In such cases, the Court "must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Id.* (internal quotation marks omitted).

## ARGUMENT

### I.     The Court has jurisdiction to resolve this action.

The District makes two arguments against the Court's subject matter jurisdiction: (1) that Plaintiffs lack standing to challenge the removal of *Stamped* from SDPC libraries and classrooms; and (2) that even if Plaintiffs were injured by the removal of *Stamped*, their claim against library access is now moot because of the District's voluntary partial restoration of the book.  Neither argument prevails.

Plaintiffs' Complaint and declarations in support of preliminary injunction plausibly allege that they desire to access *Stamped* in their school libraries and cannot because of the Board's action. Those allegations state an actual and continuous injury to their right to access information under the First Amendment. *See, e.g.*, *Little v. Llano County*, __ F.4th __, 2023 WL 2731089, at *5 (W.D. Tex. 2023) ("The removal of books initiated Plaintiffs' injuries, but the infringement on their right to access information is a 'continuing, present adverse effect[ ]' that qualifies as an injury for Article III purposes."). Additionally, two Plaintiffs allege that their children are currently enrolled in the same English III course that used *Stamped* in the last two school years. Taking these allegations as true (as the Court must), Plaintiffs have asserted a redressable injury-in-fact arising from the Board's curricular prohibition on *Stamped*.

4

The District's mootness argument doubly fails. To start, the Board's restoration of *Stamped* is incomplete and insufficient. Unlike virtually every other book in the library, students must obtain parental consent before they can access *Stamped*. That creates an obstacle to access for all students, including Plaintiffs, whether or not they may overcome that obstacle by obtaining permission from their parent or guardian. *See Counts v. Cedarville Sch. Dist.*, 295 F. Supp. 2d 996, 999 (W.D. Ark. 2003). Whether Plaintiffs have stated a cognizable First Amendment injury does not turn on whether Plaintiffs can *overcome* Defendant's burden on their First Amendment right, but on whether a burden exists at all. *Id.*; *see also Elrod v. Burns*, 427 U.S. 347, 359 n.13 (1976) ("Rights are infringed both where the government fines a person a penny for being a Republican and where it withholds the grant of a penny for the same reason."). Here, because a burden remains, Plaintiff's claim is not moot.

But even if Defendant completely reinstated *Stamped*, it would not moot Plaintiffs' claims. A Defendant cannot avoid liability simply by voluntarily halting the challenged conduct. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189-90 (2000) (discussing voluntary cessation). As the Fourth Circuit has explained, a defendant cannot moot a case if it "retains the authority and capacity to repeat an alleged harm." *Wall v. Wade*, 741 F.3d 492, 497 (4th Cir. 2014). Here, because the District has made no representation that their reinstatement of *Stamped* is permanent and incapable of rescission, it has failed to meet its burden to show mootness.

    A.    <u>Plaintiffs have standing to challenge the removal of *Stamped: Racism, Antiracism, and You* from District classrooms and libraries.</u>

To demonstrate standing, a plaintiff must show (1) an "injury in fact" that is "concrete and particularized . . . and actual or imminent"; (2) that injury must be "fairly . . . trace[able]" to the challenged conduct of Defendant's; and (3) that injury must be "redress[able] by a favorable decision" from the Court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). At the motion to dismiss stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for . . . we 'presum[e] that general allegations embrace those specific facts

that are necessary to support the claim.'" *Id.* at 561 (internal citations omitted). Courts "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

Standing requirements "are somewhat relaxed in First Amendment cases" and "[t]he leniency of First Amendment standing manifests itself most commonly in the doctrine's first element: injury-in-fact." *Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013); *see also, e.g., Lopez v. Candaele*, 630 F.3d 775, 781 (9th Cir. 2010) (citations omitted) ("First Amendment cases raise unique standing considerations that tilt dramatically toward a finding of standing."). Here, Plaintiffs each represent children that attend high school in SDPC. ECF No. 1 at ¶¶ 8-11. Plaintiffs allege that the First Amendment rights of the children they represent are injured by Defendants' removal of *Stamped* from high school libraries and classrooms. ECF No. 1 at ¶¶ 146- 150; ECF Nos. 7-1 at 17-18, 7-4, 7-5, 7-6.

Each Individual Plaintiff here has sworn that their children have a specific desire to access *Stamped* in their school library. *See* ECF Nos. 7-3 (Turner Decl.) at ¶ 7; 7-4 (Laurence Decl.) at ¶ 6; 7-5 (Kruse Decl.) at ¶ 8. As other courts have recognized, denial of access to information presents an actual and continuous injury under Article III. *See Little*, 2023 WL 2731089, at *5 ("[t]he removal of books initiated Plaintiffs' injuries, but the infringement on their right to access information is a 'continuing, present adverse effect[ ]' that qualifies as an injury for Article III purposes."). In virtually every prior challenge to a school library book removal, a plaintiff's allegation that they desire access to the removed book has been enough to confer standing. *See, e.g., Board of Educ. v. Pico*, 457 U.S. 853 (1982); *Minarcini v. Strongsville City Sch. Dist.*, 541 F.2d 577, 582 (6th Cir. 1976); *Counts*, 295 F. Supp. 2d at 999 ("[t]he fact that [plaintiff] has access to the books at home does not undermine [her standing]." (citing *Reno v. American Civ. Liberties Union*, 521 U.S. 844 (1997)). Given "the leniency of First Amendment standing," *Cooksey*, 721 F.3d at 235, Plaintiffs need not plead anything more to

establish Article III standing to challenge the removal of *Stamped* from the District's high school libraries.[1]

Further, Plaintiffs Turner and Laurence have sworn that their children, J.T. and H.L., are enrolled in the Honors English III course that previously included *Stamped* as part of its curriculum. ECF Nos. 13-1 (Turner Decl.) at ¶¶ 2-5; 13-2 (Laurence Decl. at ¶¶ 2-5). Here, where several material facts are in dispute, the material factual allegations must be viewed in the light most favorable to Plaintiffs and all reasonable inferences must be drawn in Plaintiffs' favor.

Additionally, the Eleventh Circuit's interpretation of *Lujan*'s immediacy requirement does not require dismissal of Plaintiffs' claims at any point, but certainly not at the motion to dismiss stage. *See American Civ. Liberties Union of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*, 557 F.3d 1177, 1196-98 (11th Cir. 2009). When determining immediacy, the Eleventh Circuit held that "[t]he key in all three of our decisions applying *Lujan* is that [i]mmediacy requires only that the anticipated injury occur with[in] some fixed period of time in the future. Immediacy, in this context, means reasonably fixed and specific in time and not too far off." *Id.* at 1193-94 (internal citations omitted). *See also Little*, 2023 WL 2731089, at *5.

Here, Plaintiffs do not assert a far off, uncertain, or remote injury. Rather, Plaintiffs Turner and Laurence have specifically alleged an injury to their curricular access that manifested as soon as the school year began, on August 1, 2023. ECF Nos. 13-1 (Turner Decl.) at ¶ 3; 13-2 (Laurence Decl. at ¶ 3). As that date has now passed, the harm to Plaintiffs Turner and Laurence is not in the future at all, but the present. Likewise, all Plaintiffs alleged an injury to their right to access *Stamped* in the school library that was real and actual upon the filing of the Complaint, and that recommenced as soon as the school year began. Because every Plaintiff's library access to *Stamped* was and is restricted, they have each alleged a cognizable injury-in-fact that is actual, redressable, and traceable to Defendant's conduct.

---

[1] Plaintiffs could, of course, allege that they plan to access *Stamped* on a particular date and time, but that misses the point. The First Amendment right of access does not only protect planned use; it also protects spontaneous access. *See, e.g.*, *Counts*, 295 F. Supp. 2d at 1002

### 1.  Plaintiffs' curricular injury is redressable.

Defendant separately argues that even if Plaintiffs show an injury-in-fact arising from the District's prohibition on curricular use of *Stamped*, the injury is not redressable "unless the Court is prepared to order specific high school teachers to [use *Stamped*]." ECF No. 21 at 22. If not, the District argues, then there is no chance of relief because no teacher will use *Stamped* because of "its documented historical errors, omissions, and distortions." *Id.* (citing Bernstein Decl.). But this argument fails because it overstates the burden to show redressability and improperly ignores Plaintiffs' factual claims.[2]

To start, "[t]he burden imposed by this [redressability] requirement is not onerous." *Deal v. Mercer Cty. Bd. of Educ.*, 911 F.3d 183, 189 (4th Cir. 2018) (cleaned up). As the Supreme Court has explained, even a "partial remedy satisfies the redressability requirement," *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021) (internal quotations omitted). To satisfy their burden, Plaintiffs need only show that it is "likely, as opposed to merely speculative," that a favorable decision would redress their injury. *Lujan*, 504 U.S. at 561.

Plaintiffs have plainly alleged redressable injuries. Plaintiffs Turner and Laurence have sworn that their children, J.T. and H.L., are enrolled in the Honors English III course where *Stamped* is assigned as part of the curriculum. ECF Nos. 13-1 (Turner Decl.) at ¶¶ 2-5; 13-2 (Laurence Decl. at ¶¶ 2-5). Viewing the evidence "in the light most favorable to the plaintiff," *Buscemi*, 964 F.3d at 258, an injunction against Defendant's prohibition on use of *Stamped* is likely to ensure that Plaintiffs will receive instruction and discussion about *Stamped* in their classroom.

---

[2] Defendant's argument that purported expert Bernstein's views on *Stamped* and its alleged historical inaccuracies have any bearing on what individual teachers in SDPC may teach in their English courses is speculative at best. This assertion is unbelievable given that at least one teacher in SDPC has used *Stamped* in the English III curriculum. Notwithstanding Defendant's proposed version of the facts, a party seeking dismissal for lack of subject matter jurisdiction "should prevail only if the material jurisdictional facts are not in dispute[.]" *Richmond, Fredericksburg & Potomac R. Co.*, 945 F.2d at 768.

Defendant's argument relies on this Court adopting the District's version of the facts, which it cannot. Setting aside Professor Bernstein's questionable opinion on the veracity of *Stamped*, which cannot possibly speak to what every SDPC teacher might teach, Rule 12(b)(1) simply does not permit the Court to resolve factual disputes—whether about the curriculum of Plaintiffs' specific English course or about the veracity of *Stamped*—in the Defendant's favor. Plaintiffs allege that they are enrolled in class that will use *Stamped* as a curricular material *but for* the District's censorship. That is enough to establish redressability.

## 2. Even if the Court treats Plaintiffs' Complaint as alleging a future injury, Plaintiffs have standing.

The Court should reject Defendant's argument to follow the Eleventh Circuit's standing analysis in *American Civ. Liberties Union of Fla., Inc.*, 557 F.3dat 1202and evaluate Plaintiffs' injury as an alleged future injury that Plaintiffs must show is "imminent" and not "speculative." ECF No. 21 at 11-15. The right of access protected by the First Amendment is a continuous right; not a right that vests and then extinguishes upon use. *See Minarcini*, 541 F.2d at 583 (discussing the right to receive); *see also Counts*, 295 F. Supp. 2d at 1002 (striking down library restriction that infringed on plaintiff's right to "simply go in the library, take the books off the shelf and thumb through them—perhaps to refresh her mind about a favorite passage.").

A simple thought experiment highlights why it is unhelpful to treat library access as a future harm. Consider if Plaintiff Kruse alleged that S.K. plans to check out *Stamped* from the school library on August 10, 2023. If S.K. does so, is their claim now moot? Certainly not. The right to *access* the book endures so long as S.K. remains a SDPC high school student and maintains an interest in accessing *Stamped*. As a result, SDPC's infringement on access must be treated as an *actual*, not future, injury-in-fact. *See Deal*, 911 F.3d at 188-89 ("The Supreme Court has always described and treated the two concepts—actual, ongoing injury vs imminent injury—as disjunctive.")

But even if Plaintiffs' Complaint is construed as only alleging a *future* injury to their access to *Stamped*, they still have standing. Plaintiffs' intent to access *Stamped* in their school

libraries is far more certain and imminent than the remote and speculative future injuries asserted by the plaintiffs in *Lujan*, 504 U.S. 555, and *Doe v. Obama*, 631 F.3d 157 (4th Cir. 2011).

In *Lujan*, a nonprofit environmental organization challenged an administrative regulation that narrowed enforcement of the Endangered Species Act to the United States and the high seas. *Lujan*, 504 U.S. 555. To establish standing, the organization submitted declarations from two members explaining how they would be injured by the regulation's withdrawal of endangered species support abroad. One member asserted that she would be injured because she intends to travel to Egypt and "hopes to observe the [Nile] crocodile directly." *Id.* at 563. Another member asserted that she "intends to return to Sri Lanka in the future and hopes to be more fortunate [than her previous trip] in spotting at least the endangered [Asian] elephant and leopard." *Id.* The future injury of both members was conditioned on their vague, unplanned, and indeterminate intent to take international trips to view rare wildlife. The second member even admitted that she couldn't go to Sri Lanka for at least a year because of an ongoing civil war. *Id.* at 563-64. On those facts, the Supreme Court rejected the organization's claims of standing, holding that their members' injuries were too remote and speculative to trigger Article III jurisdiction.[3]

In *Doe v. Obama*, 631 F.3d at 163, the Fourth Circuit addressed "an analogous injury." There, plaintiffs challenged an Executive Order that expanded stem cell research by, among other things, permitting the use of additional embryos created via in vitro fertilization (IVF). Plaintiffs challenged the EO, alleging that they had each adopted children created by IVF and who were each "*considering* adopting embryos again." *Id.* at 159 (emphasis added). They argued that by permitting greater use of frozen embryos for stem cell research, the EO "will 'reduce the number of *in vitro* human embryos available for adoption' such that they will be unable to adopt." *Id.* at 162. But the Fourth Circuit found that those claims of future injury were too speculative to establish Article III standing.

---

[3] Also unlike here, *Lujan*'s standing analysis arose at the summary judgment stage, where plaintiffs must produce "a factual showing of perceptible harm." *Id.* at 565

In both cases, the speculative nature of the plaintiffs' injuries provoked a legitimate chance that *no* injury would result from the challenged action. *See Doe*, 631 F.3d at 163 ("[T]he possibility that they will never suffer the alleged injury looms too large."). And in both cases, the plaintiffs' speculative injury-in-fact came with insurmountable problems with other elements of standing. *See Lujan*, 504 U.S. at 568 ("Besides failing to show injury, respondents failed to demonstrate redressability."); *Doe*, 631 F.3d at 163 ("[T]he plaintiff parents cannot establish that the claimed injury is fairly traceable to Executive Order 13505.").

This case is much different. Here, Plaintiffs merely allege a desire to access a library book. Specifically, they assert that they want to check out *Stamped* from their school library but cannot because the book was removed by the District. ECF No. 1 at ¶ 120. That is a far cry from the *Lujan* plaintiffs hoping to someday take an international safari or the *Doe* plaintiffs "considering" adoption of a new child in *Doe*. To access *Stamped* (if it were available), Plaintiffs here would need only stop by the library on one of the 5 days per week they are at school. Unlike the possibility of travel to war-torn Sri Lanka or the weighty decision to adopt another child, Plaintiffs' alleged harm does not provoke any reasonable doubt that the injury will *ever* occur. That is an important distinction because, as recognized by Justice Kennedy's concurrence in *Lujan*, the circumstances of a claim of future harm—for example, whether the harm is conditioned upon typical or extravagant behavior—can augment the requisite proof of imminence. *Lujan*, 504 U.S. at 579 (Kennedy, J., concurring) ("While it may seem trivial to require that [plaintiffs] acquire airline tickets to the project sites or announce a date certain upon which they will return, this is not a case where it is reasonable to assume that the affiants will be using the sites on a regular basis.") (citations omitted).

Contrary to the Eleventh Circuit's decision in *American Civ. Liberties Union of Fla.*, the Supreme Court's holding in *Lujan* does not require a plaintiff challenging removal of a school library book to "announce a date certain" to check out the book. *Lujan*, 504 U.S. at 579. Because the harm alleged here, even if treated as a "future" injury, is neither speculative nor remote, the Court should find that it has jurisdiction under Article III.

B.    Plaintiffs' claims are not moot.

Mootness asks a simple question: do Plaintiffs *still* have standing? Here, they do. In arguing otherwise, Defendant makes two critical mistakes. First, Defendant erroneously assumes that its partial reinstatement of *Stamped* means that there is no longer a "controversy" about students' access to the book. But that isn't true. Even after the District's action on July 6, 2023, students' access to *Stamped* remains needlessly encumbered because of the Board's hostility to the book's ideas. Second, Defendant fails to engage—much less, meet—its burden under the doctrine of voluntary cessation. Even if the Board's partial reinstatement of *Stamped* cured Plaintiffs' injury (it does not), the District has not met its "formidable burden" to make "absolutely clear" that the challenged conduct will not recur. *Friends of the Earth*, 528 U.S. at 190. For both reasons, Defendant's mootness arguments should be rejected.

1.    **The District's restriction on access to *Stamped* still infringes on Plaintiffs' First Amendment rights.**

Though it is less restrictive than a complete removal, locking *Stamped* behind a parental-consent barrier still impedes Plaintiffs' access to the book and thus triggers First Amendment scrutiny. *See infra* Part II.A.1. The District's argument—that by filing this lawsuit Plaintiffs have indicated they would provide the parental consent necessary for their children to access the book—not only disregards the fact that the Pickens NAACP represents children who may not be able to get parental consent, but also overlooks the injury caused by obstructing access to the book as well as the stigma that flows from parental consent restrictions. As other federal courts have found, the stigmatization caused by a parental consent requirement is an injury in itself, regardless of whether children are ultimately able to get the necessary consent and access the book. *See, e.g., Pratt,* 670 F.2d at 779 ("the symbolic effect of removing the films from the curriculum is more significant than the resulting limitation of access to the story"); *Counts*, 295 F. Supp. 2d at 999 ("the stigmatizing effect of having to have parental permission to check out a book [also] constitutes a restriction on access." ); *Parents, Families, and Friends of Lesbians and Gays, Inc. v. Camdenton R-III School District*, 853 F. Supp. 2d 888, 898 (W.D. Mo. 2012)

12

(implementing a procedure to request access to a blocked website did not moot First Amendment claims).

### 2. The District has not met its *formidable burden* of showing that it is *absolutely clear* that the challenged conduct will not recur.

This case is a textbook example of voluntary cessation. On July 6, 2023—ten days after Plaintiffs moved for preliminary injunctive relief—the District partially reinstated *Stamped* in its high school libraries. 7/6/23 Board Meeting. The District's litigation counsel attended the meeting and action was described on the agenda as a motion "for legal matters." *Id.* at 0:00:31. The District now argues that because of its voluntary and impermanent action, the case is moot. ECF No. 21 at 23. But "the burden of demonstrating mootness is a heavy one," *Los Angeles County v. Davis,* 440 U.S. 625, 631 (1979), and the Supreme Court has long recognized that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc.*, 528 U.S. at 189 (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 445 U.S. 283, 289 (1982)); *see also Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) ("[A] defendant cannot automatically moot a case simply by ending its unlawful conduct once sued."). Rather, "[a] defendant claiming that its voluntary compliance moots a case bears the *formidable burden* of showing that it is *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 190 (emphasis added). A defendant's burden cannot be satisfied if it "retains the authority and capacity to repeat an alleged harm." *Wall v. Wade*, 741 F.3d 492, 497 (4th Cir. 2014).

Here, the District stops well short of meeting its "formidable burden" to establish mootness. There is no external check on the Board's authority to remove books. In September, the District removed *Stamped*. In July, the District reinstated *Stamped* with parental consent. Without injunctive relief from this Court, there is nothing stopping the District from changing course and again removing *Stamped*. Because Defendant has not—indeed, *cannot*—show that its decision is final, Plaintiffs' library removal claim remains justiciable. *See, e.g.*, *Brown v. Lexington Cnty.*, No. 3:17-cv-1426-SAL, 2022 WL 3588065, at *24-26 (D.S.C. Aug. 22, 2022)

(rejecting mootness argument despite the county adopting new, constitutional policies to collect court-generated fines and fees).

Despite Plaintiffs arguing voluntary cessation in the preliminary injunction context, Defendant's Motion to Dismiss does not address the doctrine. Instead, Defendant cites a handful of cases holding that "when a legislature amends or repeals a statute, a case challenging the prior law can become moot 'even where re-enactment of the statute at issue is within the power of the legislature.'" ECF No. 21 at 24 (quoting *Brooks v. Vassar*, 462 F.3d 341, 348 (4th Cir. 2006). But those cases are inapposite. The SDPC Board of Trustees is not a legislative body and its decision to remove *Stamped* is not tantamount to passing a new law or statute. In a challenge to state law, the defendant is often an executive officer who has no independent authority to *change* the law at issue. *See, e.g.*, *Brooks*, 462 F.3d 341 (suing chairman of Virginia Department of Alcoholic Beverage Control to enjoin state liquor law); *Massachusetts v. Oakes*, 491 U.S. 576, 577 (1989) (concluded, on appeal from criminal conviction, that the later amendment of state law eliminated the basis for the overbreadth challenge but did not eliminate availability of defendant's overbreadth defense). But here, the Defendant District has unilateral authority to change its book removal decisions at will. Unlike an executive officer who must rely on a bicameral legislature to undertake *new* lawmaking, a school board (as Defendant did on July 6, 2023 after this lawsuit was filed) need only convene and proclaim that it has changed its mind. This difference explains why federal courts routinely apply the voluntary cessation doctrine to curative actions by defendant school districts. *See, e.g.*, *Lowry ex rel. Crow v. Watson Chapel Sch. Dist.,* 540 F.3d 752, 761 (8th Cir. 2008) (rejecting school district's mootness argument under voluntary cessation); *Jager v. Douglas Cty. Sch. Dist.*, 862 F.2d 824, 833 (11th Cir. 1989) (rejecting mootness argument where, "[u]nder the imminent threat of the Jagers' lawsuit, the School District voluntarily ceased the practice of having pregame religious invocations delivered by Protestant ministers."); *Hall v. Bd. of Sch. Comm'rs*, 656 F.2d 999, 1000 (5th Cir. 1981) (holding that defendant school board's voluntary cessation of morning devotionals upon learning that a lawsuit was going to be filed did not moot the plaintiff's Establishment Clause challenge).

14

Defendant never explains why its action, unlike remedial actions by other school boards, should be excused of its formidable burden under voluntary cessation.

**II.        Plaintiffs state a claim upon which relief may be granted.**

Dismissal under Rule 12(b)(6) is appropriate only if "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove *any* set of facts in support of his claim entitling him to relief." *Martin*, 858 F.3d at 248 (emphasis added). Here, Plaintiffs plausibly allege that *Stamped: Racism, Antiracism, and You* was removed by the District's Board of Trustees because of Board members' opposition to the opinions contained in the book and *not* because of any legitimate concern about the book's educational suitability. Because such conduct, if proven, would undoubtedly violate the "transcendent imperatives of the First Amendment," *Pico*, 457 U.S. at 864, Defendant's motion under Rule 12(b)(6) should be denied.

In arguing otherwise, the District makes two errors. First, the District badly distorts the Rule 12(b)(6) standard and attempts to inject its own facts into the analysis. *See, e.g.*, ECF No. 21 at 6 (urging consideration of its self-serving after-the-fact rationale for removing *Stamped*. And second, the District misstates the legal standards that govern Plaintiffs' claims.

A.        <u>Plaintiffs plausibly allege that the District's restrictions on students' access to *Stamped* violates the First Amendment.</u>

To resolve a First Amendment challenge, courts "must engage in a multistep analysis." *S.C. State Conf. of NAACP v. Kohn*, No. 3:22-cv-01007-MGL, 2023 WL 144447, at *6 (D.S.C. Jan. 10, 2023); *see Sharpe v. Winterville Police Dept.*, 59 F.4th 674, 680-81 (4th Cir. 2023); *see also Porter v. Bd. of Trustees of N. Carolina St. Univ.*, 72 F.4th 573, 588 (4th Cir. 2023) (Richardson, J., dissenting) ("Most free speech cases follow essentially the same path."). First, the plaintiff must show that the defendant infringed on a right protected by the First Amendment. *Id.*; *Sharpe*, 59 F.4th at 681. If defendant's conduct implicates the First Amendment, "the Court

must then determine and apply the appropriate level of scrutiny." *Kohn*, 2023 WL 144447, at *6. But whatever level of scrutiny applies, "the burden of persuasion that there has been no unnecessary abridgement of First Amendment rights rests with the defendant." *Sheck v. Baileyville Sch. Comm.*, 530 F. Supp. 679, 684-85 (D. Me. 1982) (holding that burden of showing constitutional basis for removing school library book rests with school committee); *Pratt*, 670 F.2d at 779 ("[A]ppellant has failed to carry its burden of establishing that a substantial governmental interest existed for interfering with students' right to receive information."); *see also Sharpe*, 59 F.4th at 681, n.7 ("[T]he burden remains on the government regardless of the [level of scrutiny].").

### 1. Plaintiffs plausibly allege that Defendant's restrictions on *Stamped* implicate their First Amendment rights.

Students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Comty. Sch. Dist.*, 393 U.S. 503, 506 (1969). Like their affirmative right to speak, public school students also retain their First Amendment right to receive information. *See, e.g.*, *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972) (the right to receive information is "nowhere more vital than in our schools."); *Sheck v. Baileyville Sch. Comm.*, 530 F. Supp. 679, 686 (D. Me. 1982) (compiling cases). And while courts afford school authorities broad discretion to decide what materials are available to students and taught in the classroom, that authority is not absolute and must be exercised "in a matter that comports with the transcendent imperatives of the First Amendment." *Pico*, 457 U.S. at 864; *see, e.g.*, *Pratt*, 670 F.2d at 776 (First Amendment violated by curricular prohibition); *Counts*, 295 F. Supp. 2d at 999 (First Amendment violated by restriction on library access); *see also, e.g.*, *West Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 ("If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion . . . If there are any circumstances which permit an exception, they do not now occur to us.").

Plaintiffs allege in their Complaint that on September 26, 2022, the District engaged in two discrete acts of censorship: (1) it removed *Stamped* from every District library and media center, and (2) it prohibited teachers from using *Stamped* as a curricular resource in the classroom. ECF No. 1 at ¶¶ 3, 120. Both allegations implicate Plaintiffs' First Amendment rights to receive the information contained in *Stamped*. *See, e.g.*, *Zykan v. Warsaw Cmty. Sch. Corp.*, 631 F.2d 1300, 1304 (7th Cir. 1980) ("Secondary school students certainly retain an interest in some freedom of the classroom, if only through the qualified 'freedom to hear.'").

Although the District cites cases holding that a school's basis for its book censorship satisfied First Amendment scrutiny, it identifies no cases holding that school's censorship of a book does not *implicate* a student's First Amendment rights. As a result, Plaintiffs easily carry their initial burden to allege conduct that implicates their First Amendment rights.

> ### 2. Plaintiffs plausibly allege that the District restricted student access to *Stamped* because of the Board's political and ideological opposition to the book.

Plaintiffs' Complaint alleges that "the Board's decision to remove *Stamped* was not based on any legitimate curricular motivation," ECF No. 1 at ¶ 129, and that "it was the Board's hostility to the opinions contained in the book, not the book's educational suitability, that drove the decision to remove the book," *id.* at ¶ 144. Plaintiffs even head off the District's conspicuously late-blooming justification by pointing out that during the Board's deliberation, "no Board member argued that the book contained any particular inaccuracy." *Id.* at ¶ 131. As detailed below, each of these facts is plausible, non-conclusory, and well supported by the circumstantial evidence alleged in the Complaint.

In its Motion to Dismiss, the District chastises these allegations as no more than "speculation and facts about *others'* motivation," ECF No. 21 at 28, and contends that Plaintiffs must allege direct evidence of the Board's impermissible purpose. But neither *Twombly* nor *Iqbal* (nor any other case) requires a complaint to set forth direct evidence of a defendant's malintent. To the contrary, circumstantial evidence (*i.e.*, evidence from which other facts may be

17

inferred) "is not only sufficient, [it] may also be more certain, satisfying, and persuasive than direct evidence." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) (holding that direct evidence is not required to prove employment discrimination under Title VII). Indeed, circumstantial evidence may even *overcome* direct evidence that an official acted permissibly. *See N. Carolina v. Covington*, 138 S. Ct. 2548, 2553 (2018) (circumstantial evidence of racial predominance in redistricting outweighed "undisputed evidence that the 2017 legislature instructed its map drawers not to look at race.").

     *Tobey v. Jones*, 706 F.3d 379 (4th Cir. 2013) illustrates this well. There, the plaintiff claimed that airport TSA officers violated his First Amendment rights by seizing him "without probable cause because of the message conveyed by [his] silent, nonviolent expression of objection to the TSA's screening policies." *Id.* at 387. In support of those legal conclusions, the plaintiff alleged that after he removed his sweatshirt and revealed a t-shirt showing the text of the Fourth Amendment, officers told him he did not have to remove his clothing. *Id.* After the plaintiff responded that wished to express his views that the screening process was unconstitutional, he was immediately handcuffed without explanation. *Id.* Although the plaintiff did not assert direct evidence of the agents' retaliatory intent, the Fourth Circuit still held that the complaint's factual allegations "most certainly set[] forth a valid First Amendment retaliation claim." *Id.* Specifically, the court held that "temporal proximity of [plaintiff's] peaceful protest and his arrest . . . adequately support Mr. Tobey's legal assertion that he was unlawfully seized in retaliation for exercising his protected First Amendment rights." *Id.* at 387-88; *see also id.* at 390-91 ("Viewing all facts as alleged by Mr. Tobey as true, which is the posture we must take when reviewing a 12(b)(6) motion, we can infer causation.").

     This case is no different. Plaintiffs allege that the Board's hostility to the opinions contained in *Stamped*, and not the book's educational suitability, drove its decision to remove the book from the library and prohibit its use in the classroom. ECF No. 1 at ¶ 144. As in *Tobey*, Plaintiffs cannot point to a smoking gun to establish malintent—but they don't need to.

Plaintiffs' assertions about the Board's motivation are well supported by, and can be reasonably inferred from, many other facts in the complaint. Such facts include that:

- Individuals that lobbied for *Stamped*'s removal, including the original parental challengers, did so because of their political and ideological opposition to the book, *see id.* at ¶¶ 82-84, 99-104, 108-109;

- Political opposition to Ibram X. Kendi, "antiracism," and Critical Race Theory (CRT) is an emphatic focus of ultra conservative politicians, including the South Carolina Freedom Caucus, *id.* at ¶¶ 50-55, and South Carolina Superintendent Ellen Weaver, who has vowed to keep that type of "woke Washington ideology" from infecting South Carolina classrooms, *id.* at ¶¶ 58-60;

- Two diverse book review committees unanimously concluded that the book is educationally suitable and was being properly used in the classroom, *id.* at ¶¶ 86-89 (school committee), 92-96 (District committee);

- Multiple professional organizations, including the National Education Association (NEA), endorse and encourage use of *Stamped* in the classroom, *id.* at ¶ 23

- Despite receiving the committees' recommendation, no Board member mentioned or responded to either book review committees' unanimous conclusion that *Stamped* is educationally suitable, *id.* at ¶ 135;

- During the Board's consideration of *Stamped*, no Board member explained how or why the book was unsuitable for the library or classroom use, *id.* at ¶¶ 130-135;

- The public received the Board's decision as a formal embrace of advocates' ideological opposition to "CRT," *id.* at ¶ 121 (SC Rep. Thomas Beach: "School Board removes material that . . . pushed CRT due to pressure from parents and threat of refund of taxpayer money for breaking state proviso laws."), ¶ 122 (Conservatives of the Upstate: "pressure works!").

Plaintiffs' Complaint shows that, in the end, the Board was presented with two competing requests. On the one hand, they heard from a small but insistent group that demanded *Stamped* be removed because of its "un-American," "communist," and "CRT" ideas. On the other, they heard from educators, administrators, parents, and curricular experts who read the book, concluded that the book was educationally suitable and aligned with the South Carolina ELA curriculum, and advocated for retaining the book. Having heard those perspectives and offering little contemporaneous justification for their action, the motivations of the challengers can be reasonably imputed to the Board. *See Pratt*, 670 F.2d at 778 (rejecting post hoc justification for

curricular decision and finding that "the board eliminated the films . . . because the majority of the board agreed with those citizens who considered the films' ideological and religious themes to be offensive.").

Taken together (and as true), these facts are more than adequate to support Plaintiffs' ultimate claim—that the decisive motivation for the Board's removal of *Stamped* was its ideological opposition to the ideas in the book and not any legitimate pedagogical interest such as educational suitability. The District will have an opportunity to present its fanciful factual defense (that it was secretly concerned with the book's factual accuracy), but Rule 12(b)(6) presents no vehicle for such an argument.

### 3. The District's basis for removing *Stamped* does not satisfy First Amendment scrutiny.

Assuming (as the Court must) that the Board was motivated by ideological opposition to *Stamped* and *not* by any legitimate concern about the book's educational suitability, the District's conduct violates the First Amendment. No matter what level of scrutiny applies, the First Amendment does not permit the District to infringe on Plaintiffs' First Amendment right of access based on the Board's political desire to suppress contrary viewpoints.

*Curricular Prohibition*

Local curricular control is not absolute. Even a cursory review of precedent demonstrates this point. On at least two occasions, the Supreme Court has struck down curricular prohibitions on First Amendment grounds. *See, e.g.*, *Meyer v. Nebraska*, 262 U.S. 390, 403 (1923) (striking down prohibition on teaching of foreign languages in public and private schools); *Epperson v. Arkansas*, 393 U.S. 97, 108 (1968) (striking down law banning teaching of evolution in public schools and universities). Addressing facts more similar to those presented here, the Eighth, Ninth, and Eleventh Circuit have each concluded that a school board's decision to prohibit the use of particular curricular materials must be "reasonably related to a legitimate pedagogical interest." *Arce*, 793 F.3d at 982-83 (applying the Supreme Court's test from *Hazelwood Sch. Dist.*, 484 U.S. at 266); *Virgil v. Sch. Bd. of Columbia Cty., Fla.*, 862 F.2d 1517, 1521-25 (11th

20

Cir. 1989) (same); *Pratt*, 670 F.2d at 776. Defendant's Motion makes no argument for why this Court should diverge from those rulings and appears to concede that *Kuhlmeier* should indeed apply here. ECF No. 21 at 27 ("[T]he District has wide latitude under *Hazelwood* over the selection and removal of materials such as *Stamped* in its schools' curricula.").

Applying *Kuhlmeier*, Plaintiffs allege a plausible claim for relief. Plaintiffs allege that Board prohibited use of *Stamped* in the classroom because of its ideological opposition to the book and *not* by any legitimate concern about the book's educational suitability. Not only is this sort of rank viewpoint discrimination fundamentally anathema to the First Amendment, it also fails *Kuhlmeier*'s test for curricular infringement because suppression of certain political views is not reasonably related to a legitimate pedagogical interest.

*Library Removal*

Plaintiffs' library removal claim is even easier. As several courts have recognized, the First Amendment is even less tolerant of censorship in the library than it is in the classroom. *See, e.g.*, *Campbell v. St. Tammany Par. Sch. Bd.*, 64 F.3d 184, 189 (5th Cir. 1995) (holding that a school's library book removal "must withstand greater scrutiny within the context of the First Amendment than would a decision involving a curricular matter."); *Romano*, 725 F. Supp. at 690 ("[I]nroads on the First Amendment in the name of education are less warranted outside the confines of the classroom and its assignments."); *see also American Civ. Liberties Union of Fla., Inc.*, 557 F.3d 1177 (distinguishing curricular decisions from book-removal decisions).

As argued in Plaintiffs' Motion for Preliminary Injunction, ECF No. 7-1, two analytical frameworks could govern Plaintiffs' challenge to the District's removal of *Stamped* from its school libraries: *Tinker*'s substantial disruption test or *Pico*'s prohibition on removing library books "simply because [school officials] dislike the ideas contained in those books." *See* ECF No. 7-1 at 24-32. For the purposes of this motion, it does not matter which test controls—neither is satisfied.

Under *Tinker*, "a mere desire to avoid discomfort and unpleasantness [is] an insufficient basis to regulate speech; there ha[s] to be disruption in the sense that the speech would materially

and substantially interfere with . . . the operation of the school." *Kowalski v. Berkeley Cty. Sch.*, 652 F.3d 565, 572 (4th Cir. 2011). Accepting Plaintiffs' allegations as true, there is no evidence that the existence of *Stamped* in school libraries has caused, or has the potential to cause, a material disruption of the learning environment. Because there is no evidence that *Stamped* has caused or will cause the sort of disruption contemplated by *Tinker*, the District cannot "prohibit the [availability] of one particular opinion," 393 U.S. at 511, by removing *Stamped* from its library shelves and media centers.

Plaintiffs' Complaint also alleges a clear violation of the Supreme Court's holding in *Pico*. In fact, the Complaint alleges that the District's motivation for suppressing access to *Stamped* is the sort disparaged by both the plurality and dissent in *Pico*. Writing for a plurality of the Court, Justice Brennan explained:

> If a Democratic school board, motivated by party affiliation, ordered the removal of all books written by or in favor of Republicans, few would doubt that the order violated the constitutional rights of the students denied access to those books. The same conclusion would surely apply if an all-white school board, motivated by racial animus, decided to remove all books authored by blacks or advocating racial equality and integration.

*Pico*, 457 U.S. at 870-71.

Notably, even the dissenters "cheerfully concede[d]" that such facts would violate the First Amendment. *See id.* at 908 (Rehnquist, J., dissenting) ("I would save for another day—feeling quite confident that that day will not arrive—the extreme examples posed in Justice BRENNAN's opinion").

Yet that is exactly what is alleged here. Plaintiffs allege that an all-white school board ordered the removal of a book because of the opinions on race, racism, and anti-racism contained in the book. Plaintiffs allege that the Board's partisan political opposition to Ibram X. Kendi's views on race, particularly the concept of antiracism, was the decisive motivation for removing the book. Given that the entire *Pico* Court agreed that such facts would violate the First Amendment, Defendant's Motion to Dismiss should be denied.

B.  The District's arguments against First Amendment scrutiny are unavailing.

The District makes two arguments for why its curricular decisions should be categorically beyond the reach of the First Amendment. One is logically flawed, the other is legally flawed.

### 1.  A decision is not "reasonably related to a pedagogical interest" simply because it relates to curricula.

Defendant's first argument is grounded in a useless tautology. The District argues that it "cannot be in violation of the First Amendment for exercising discretion over its schools' curricula because the selection and makeup of school curriculum is, by definition, a legitimate pedagogical concern." ECF No. 21 at 28. But if every curricular decision is categorically "related to a legitimate pedagogical concern," the test is no test at all. Under the District's formulation, a school board could prohibit teachers from assigning Black authors, or from teaching about the Holocaust, or from providing materials that celebrate capitalism. And no matter how base, discriminatory, or partisan the motivations are for those decisions, the First Amendment is not implicated because they are unconditionally "related to a legitimate pedagogical concern."

But that is not the law. Even courts that take a maximalist view of local discretion agree that curricular control is not unchecked. *See, e.g.*, *Zykan*, 631 F.2d at 1305 ("To be sure, the discretion lodged in local school boards is not completely unfettered by constitutional considerations."). Because it is safe to assume that the U.S. Supreme Court did not create a test that reduces to a nullity, the District's argument that *all* curricular decisions meet the *Kuhlmeier* standard must be rejected.

### 2.  This case is not controlled by *Boring* or any other public employee speech case.

In its second argument for curricular immunity, the District recycles its use of *Boring*, 136 F.3d 364. But as explained in Plaintiffs' Reply in Support of Preliminary Injunction, ECF No. 13 at 10, *Boring* is a public employee speech case. As the first line of the opinion states: "The only issue in this case whether a public high school teacher has a First Amendment right to participate in the makeup of the school curriculum through the selection and production of a

play." *Id.* at 366. In answering that question, the Fourth Circuit relied exclusively on the

*Pickering—Connick* framework that governs public-employee speech. *Id.* at 368-69. The court

discussed the curricular standard in *Kuhlmeier*, but only to determine whether the teacher was

speaking as a private citizen on a matter of public concern or as part of their job responsibilities.

*Id.*

In *Lee v. York Cty. Sch. Div.*, 484 F.3d 687 (4th Cir. 2007), another panel of the Fourth

Circuit helpfully described the holding of *Boring* in this way:

> The *Boring* Court reasoned that, if contested speech is curricular in nature, it
> does not constitute speech on a matter of public concern. In so concluding,
> Judge Widener reasoned that disputes over curriculum constitute ordinary
> employment disputes and do not implicate speech on matters of public concern.
> Thus, when a First Amendment free speech dispute involves a teacher-
> employee who is speaking within the classroom, the determination of whether
> her speech involves a matter of public concern is dependent on whether or not
> the speech is curricular.

*Lee*, 484 F.3d at 697.

Understood in this way, the District's misapplication of *Boring* is evident. Public

employee speech is not the issue here. The question in this case is whether school officials

violate *students'* First Amendment rights when they *restrict* access to certain materials based on

their ideological opposition to those materials. On that question, *Boring* has nothing to say.

As two different circuits have recognized, a student's First Amendment right of access is

not coextensive with a teacher's positive right to speak on a school's behalf through the selection

of curricular materials. *Arce*, 793 F.3d at 982 (distinguishing students' right of access claims

from its holding in *Downs v. L.A. Unif. Sch. Dist.*, 228 F.3d 1003 (9th Cir. 2000) that "school

teachers have no First Amendment right to influence curriculum."); *Chiras v. Miller*, 432 F.3d

606, 618-19 (5th Cir. 2005) ("The conclusion that no forum exists in this case does not

necessarily preclude, however, Appellant Rodriguez's asserted right as a student to receive the

information in Chiras' textbook from the school."). Because *Boring* addresses a factually and

legally distinct issue, its holding has no bearing on Plaintiffs' claims.

24

## CONCLUSION

The District's Motion to Dismiss should be denied. Taking the well pleaded facts as true and accepting all reasonable inferences drawn therefrom, Plaintiffs have adequately asserted that the District's removal of *Stamped: Racism, Antiracism, and You* violates their First Amendment rights.

Dated:  August 8, 2023

Respectfully submitted,

**ACLU OF SOUTH CAROLINA**

Allen Chaney
Fed. Id. 13181
P.O. Box 1668
Columbia, SC 29202
Tel: (864) 372-6681
achaney@aclusc.org

**NAACP**

Janette Louard*
Anna Kathryn Barry**
Martina Tiku**
4805 Mt. Hope Drive
Baltimore, MD 21215
Tel: (410) 580-5777
jlouard@naacpnet.org
abarnes@naacpnet.org
mtiku@naacpnet.org

*  *Pro hac vice applications to be filed*
** *Admitted pro hac vice*