**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION**

| | |
|---|---|
| Pickens County Branch of the NAACP; <br><br> Rebecca Turner and Brandon Turner, on behalf of minor children J.T. and G.T.; <br><br> Susanna Ashton and Peter Laurence on behalf of minor children H.L. and C.L.; <br><br> Reba Kruse and Derrick Kruse on behalf of minor children S.K. and R.K., <br><br>      Plaintiffs, <br> v. <br><br> School District of Pickens County, <br><br>      Defendant. | Case No. 8:23-cv-01736-BHH |

### SCHOOL DISTRICT OF PICKENS COUNTY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Oral argument requested

NELSON MULLINS RILEY & SCARBOROUGH LLP

Miles E. Coleman
Fed. ID No. 11594
2 West Washington Street, Suite 400
Greenville, SC 29601
miles.coleman@nelsonmullins.com
(864) 373-2300

*Attorney for School District of Pickens County*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ........................................................................................................................1

ARGUMENT ..............................................................................................................................3

    I.    Plaintiffs have not alleged a concrete and particularized injury that is redressable by the relief they seek. ........................................................................................3

        A.    There is no 'relaxed' standard for standing in cases like this. ................................3

        B.    Plaintiffs' creative recharacterizations of their allegations can't remedy the fact that they never pled a specific intent to check out *Stamped*. .......................4

        C.    Plaintiffs fail to evade or distinguish *Lujan* and *Doe*. ............................................6

        D.    Plaintiffs tacitly concede that their alleged curricular injury is not traceable to the District or redressable by the Court. ............................................................7

    II.    Even if Plaintiffs had standing to assert a library access claim, their claim has been mooted by intervening events. ..............................................................................9

        A.    Substantial case law confirms that a public school board is legislative in nature, and its decisions are entitled to a presumption of validity. ........................9

        B.    Plaintiffs' speculation about hypothetical local members of the NAACP is insufficient to avoid mootness. ............................................................................10

        C.    Well-established precedent upholds parents' authority and control over the education of their children, and the District's accommodation of that right cannot constitute an injury. ....................................................................................11

        D.    The Supreme Court and Fourth Circuit have upheld public school programs requiring prior parental permission before a student can access or receive instruction or information. .................................................................12

        E.    Plaintiffs' discussion of voluntary cessation misses the mark. ............................12

    III.    Plaintiffs have not stated a claim on which relief can be granted. ..................................14

CONCLUSION ..........................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Civ. Liberties Union of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*,
557 F.3d 1177 (11th Cir. 2009) ................................................................................6, 7

*Am. Humanist Ass'n v. McCarty*,
851 F.3d 521 (5th Cir. 2017) .......................................................................................10

*Boring v. Buncombe Cnty. Bd. of Educ.*,
136 F.3d 364 (4th Cir. 1998) .......................................................................................14

*C.N. v. Ridgewood Board of Education*,
430 F.3d 159 (3d Cir. 2005) ........................................................................................11

*Common Cause v. Lewis*,
956 F.3d 246 (4th Cir. 2020) .........................................................................................9

*Cooksey v. Futrell*,
721 F.3d 226 (4th Cir. 2013) .........................................................................................3

*Counts v. Cedarville Sch. Dist.*,
295 F.Supp. 2d 996 (W.D. Ark. 2003) ........................................................................11

*Lowry ex. rel. Crow v. Watson Chapel Sch. Dist.*,
540 F.3d 752 (8th Cir. 2008) .......................................................................................13

*State ex rel. Dilley v. W. Va. Pub. Employees Retirement Sys.*,
375 S.E.2d 202 (W. Va. 1988) .....................................................................................10

*Frazier v. Winn*,
535 F.3d 1279 (11th Cir. 2008) ...................................................................................12

*Gunter v. N. Wasco Cnty. Sch. Dist. Bd. of Ed.*,
577 F. Supp. 3d 1141 (D. Or. 2021) ............................................................................10

*Hall v. Bd. of Sch. Comm'rs*,
656 F.2d 999 (5th Cir. 1981) .......................................................................................13

*Harrah Indep. Sch. Dist. v. Martin*,
440 U.S. 194 (1979) .......................................................................................................9

*Harty v. Burlington Coat Factory of South Carolina, LLC*,
No. 3:11–1138–MBS, 2012 WL 264688 (D.S.C., Jan. 30, 2012) ...........................5, 7

*Jager v. Douglas Cty. Sch. Dist.*,
   862 F.2d 824 (11th Cir. 1989) ................................................................................................13

*Justice 360 v. Stirling*,
   42 F.4th 450 (4th Cir. 2022) ..................................................................................................4

*Lopez v. Candaele*,
   630 F.3d 775 (9th Cir. 2010) .................................................................................................3

*Miramonti v. Richland Cnty. Sch. Dist. One*,
   885 S.E.2d 406 (S.C. Ct. App. 2023) ..................................................................................7, 9

*Moss v. Spartanburg Cnty. Sch. Dist. 7*,
   683 F.3d 599 (4th Cir. 2012) ................................................................................................12

*Pierce v. Society of the Sisters*,
   268 U.S. 510 (1925) ..............................................................................................................11

*Tobey v. Jones*,
   706 F.3d 379 (4th Cir. 2013) ........................................................................................14, 15

*Troxel v. Granville*,
   530 U.S. 57 (2000) ................................................................................................................11

*Wisconsin v. Yoder*,
   406 U.S. 205 (1972) ..............................................................................................................11

*Wood v. Strickland*,
   420 U.S. 308 (1975) ................................................................................................................9

*Zorach v. Clausen*,
   343 U.S. 306 (1952) ..............................................................................................................12

**Statutes**

S.C. Code Ann. § 1-6-10(5) .............................................................................................................10

S.C. Code Ann. § 6-1-130(A) ..........................................................................................................10

S.C. Code Ann. § 11-35-310(24) .....................................................................................................10

S.C. Code Ann. § 59-32-50...............................................................................................................11

**Other Authorities**

8/22/22 SDPC Board Meeting, *available at* https://tinyurl.com/5hwze3y9 .................................15

**INTRODUCTION**

The Court should dismiss Plaintiffs' Complaint, and nothing in Plaintiffs' Response changes that conclusion. The District will not repeat the arguments that the Court has already read. But a few of Plaintiffs' erroneous arguments and creative characterizations warrant rebuttal.

*First*, Plaintiffs' arguments for standing misapprehend their own allegations (not to mention the law) in an effort to backfill what is missing from their Complaint. But the record is clear: Plaintiffs simply have not alleged in their Complaint or declarations that anyone actually tried to, intended to, or specifically intends in the future to check out *Stamped* from the school library. That's the end of the road on that issue. They lack standing. Plaintiffs' discussion of whether their alleged injury is current or future misses the point: without an allegation that they tried to or specifically plan to check the book out, there's no injury *at all*—not past, present, or future.

In an effort to avoid that conclusion, Plaintiffs attempt to distinguish *Lujan* and Fourth Circuit precedent. But they miss the mark there, too. The fact that Plaintiffs' inchoate desire to read *Stamped* would require them to walk down the hall rather than travel across the globe doesn't change the legal analysis, and it doesn't matter that plaintiff's potential action might hypothetically arise this afternoon rather than next year. Those are differences of degree, not kind, and they do not change the analysis. Under controlling precedent, the critical factor isn't the distance or duration of the speculative action, but the absence of any *actual*, *specific intent* to act.

Plaintiffs similarly fail to establish standing to assert a curricular claim. Their Response doesn't even address, much less rebut, the fact that the particular English teachers in whose classes Plaintiffs' children are enrolled did not use *Stamped* last year even *prior* to the controversy and the Board's vote. Accordingly, Plaintiffs' alleged injury—the absence of *Stamped* from those particular classrooms—isn't traceable to the District's action, and even if the Court grants the relief Plaintiffs seek, it is pure speculation that the teachers would use *Stamped* as a supplemental,

optional text merely because they can. Unless the Court *sua sponte* orders those teachers to use a particular supplemental text, this suit will not redress Plaintiffs' alleged curricular injury.

*Second*, even if Plaintiffs initially had standing to bring a library claim, that claim has been mooted. It is undisputed that each of the Plaintiffs' high school aged children had access to *Stamped* in the school library on the first day of this school year, and they still have access today. Because Plaintiffs already have the relief that they seek, their claim is moot. Plaintiffs try to avoid this conclusion by arguing that the local chapter of the NAACP *might* represent children who *might* want to check out *Stamped* and who *might* not be able to obtain parental permission. That argument *might* work if Plaintiffs had first determined that the local NAACP chapter actually did, in fact, have child members who fit that description, and if Plaintiffs had actually alleged those facts in their Complaint or their declarations. They did not.

Nor can Plaintiffs avoid the mootness of their library claim by arguing that the District's return of the book to the high school libraries was a pretextual voluntary cessation. A public school's policy changes carry a presumption of legislative validity and can moot a claim. Contrary to Plaintiffs' argument, there's a mountain of case law—from the United States Supreme Court, South Carolina's courts, and other jurisdictions—saying that school boards are legislative in nature, and their policies and decisions are entitled to a legislative presumption of validity. That's particularly true when, as here, the change is one the Board has repeatedly contemplated over the past ten months, and the change follows a change in Board membership.

*Third*, Plaintiffs' arguments that they have stated a viable claim rest on distinguishable case law and on factual distinctions that make no difference. The Court should, therefore, dismiss Plaintiffs' Complaint.

## ARGUMENT

I.  **Plaintiffs have not alleged a concrete and particularized injury that is redressable by the relief they seek.**

Plaintiffs lack standing, and nothing in their Response alters that conclusion. Despite their best efforts to paper over the deficiencies of their Complaint, the fact remains that they have not pled any injury, much less one that's redressable by the Court. Their arguments are discussed and rebutted below.

### A.  There is no "relaxed" standard for standing in First Amendment cases like this.

As a threshold matter, Plaintiffs are incorrect when they argue in their Response that Article III doesn't apply to them because standing requirements are "relaxed" in First Amendment cases. (*See* Pl.s' Resp. at 6, ECF No. 24.) They're wrong for at least two reasons.

*First*, the two case excerpts they cite in support of this proposition are distinguishable. Both involved the question of whether a plaintiff seeking to challenge a speech-penalizing statute must first violate the statute and suffer the consequences or, instead, if he can bring *a pre-enforcement challenge* to the statute. *See Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013) (explaining that First Amendment standing to bring a pre-enforcement challenge to a statute was permitted because otherwise "there is a possibility that, rather than risk punishment for his conduct in challenging the statute, he will refrain from engaging further in the protected activity"); *Lopez v. Candaele*, 630 F.3d 775, 781 (9th Cir. 2010). Even applying this lowered standard for pre-enforcement challenges in First Amendment cases, the *Lopez* court still found that plaintiff had failed to prove an injury in fact. *See Lopez*, 630 F.3d at 781.

The instant litigation presents a different type of fact pattern, and the *Cooksey*/*Lopez* standard does not apply here. This is not a pre-enforcement challenge where Plaintiffs can preemptively file suit to avoid suffering a punitive state sanction. Nor does the reasoning of

3

*Cooksey* apply here, where there's no chilling effect warranting a relaxation of the requirement of an actual injury. Accordingly, this is not a case where Plaintiffs can duck under the constitutional requirement to demonstrate an actual and particularized injury-in-fact.

*Second*, even if this relaxed standard did apply, Plaintiffs must *still* establish the irreducible constitutional elements of standing. *See Justice 360 v. Stirling*, 42 F.4th 450, 458–59 (4th Cir. 2022) (holding that even if standing requirements were relaxed, "courts may not assign it as a rubber stamp" and a plaintiff "*still* must show that it has '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision'") (citation omitted) (emphasis added). Plaintiffs haven't established those elements, and their case should be dismissed.

**B. Plaintiffs' creative recharacterizations of their allegations can't remedy the fact that they never pled a specific intent to check out *Stamped*.**

Plaintiffs argue in their Response that they have pled a sufficiently definite intention to check out *Stamped* from the District's libraries. (*See* Pl.'s Resp. at 6, ECF No. 24.) Not even close. The Complaint contains no such allegations. Looking first at the individual Plaintiffs, the Complaint alleges only that their children attend (or someday "will attend") high schools where *Stamped* used to be available but no longer is. (*See* Compl. ¶ 150, ECF No. 1.) That's it. There's not a word about whether those students have attempted to check out *Stamped* or whether they specifically plan to do so in the future. In the absence of such allegations, the Complaint falls short of the specificity required to establish standing. (*See* Mot. to Dismiss at 11–16, ECF No. 21.)

The organizational Plaintiff fares no better. The Complaint alleges only that the "Pickens NAACP represents members and children of members who want to check out or otherwise access *Stamped: Racism, Antiracism, and You* in their school libraries, media centers, or classrooms." (*Id.* ¶ 146.) But an inchoate possibility that unspecified members may "want to" do something at an

4

undefined point in the future is not sufficient to establish standing. (*See* Mot. to Dismiss at 11–16, ECF No. 21.) The Complaint does not establish Plaintiffs' standing for their library access claim.

The Complaint's silence on this point should be the end of the road on this claim because "later-submitted evidence cannot correct insufficient pleading in Plaintiff's complaint." *Harty v. Burlington Coat Factory of South Carolina, LLC*, No. 3:11–1138–MBS, 2012 WL 264688 at *4 (D.S.C., Jan. 30, 2012) (granting defendants' motion to dismiss and holding that "[b]ecause standing is 'an indispensable part of the plaintiff's case,' [] its elements must be supported by sufficient factual allegations in the complaint. Although Defendant's motion to dismiss provides clear notice that the sufficiency of Plaintiff's complaint is being attacked, Plaintiff has not moved to amend his complaint.").

Even if the Court looks at Plaintiffs' declarations, they don't demonstrate that Plaintiffs pled a specific and definite plan or intent to check out *Stamped*. Rather, they merely allege that students cannot check the book out and would like the opportunity for it to be available. (*See* Declaration of Rebecca Turner ("Turner Decl."), ECF 7-3 ¶ 7 ("But for the District's censorship, my children would have the opportunity to be exposed to the ideas, opinions, and viewpoints . . . by checking out *Stamped* from the school library."); Declaration of Peter Laurence ("Laurence Decl."), ECF 7-4 ¶ 6 ("The District's action has also deprived my children from being able to access *Stamped* in the school library."); Declaration of Reba Kruse ("Kruse Decl."), ECF 7-5 ¶ 8 ("My children are also denied access to self-guided exploration of the ideas in the book through a classroom or school library.").) That's a far cry from the level of specific intent needed to establish standing.

Even after being put on notice of these shortcomings, Plaintiffs *still* did not allege any specific intention to check out *Stamped* from the libraries in their later-submitted supplemental declarations. (*See* Supplemental Declaration of Peter Laurence ("Laurence Suppl. Decl."), ECF 13-1 ¶¶ 6, 8 (alleging only that the District's removal of *Stamped* deprived his children of "the

5

opportunity to be exposed to the ideas, opinions, and viewpoints expressed in *Stamped* . . . through independent study by checking out *Stamped* from the school library" and that "The District's action has also deprived my children from being able to access *Stamped* in the library"); Supplemental Declaration of Rebecca Turner ("Turner Suppl. Decl."), ECF 13-2 ¶ 9 (alleging only that the District's removal of *Stamped* deprived her children of "the opportunity to be exposed to the ideas, opinions, and viewpoints in the classroom and through independent study by checking out Stamped from the school library).)

### C. Plaintiffs fail to evade or distinguish *Lujan* and *Doe*.

In an effort to avoid the deficits of their Complaint and declarations, Plaintiffs attempt in their Response to distinguish *Lujan* and Doe by arguing that the rule established in those cases shouldn't apply in cases involving more pedestrian activities like checking out a library book. (*See* Pl.'s Resp. at 9 –11, ECF No. 24.) According to Plaintiffs, they are not required to plead a specific intent to check out *Stamped* because—unlike the alleged injuries in *Lujan* and *Doe*—they might get an urge to read *Stamped* sometime soon and it wouldn't require them to travel too far. (*Id*.) But those distinctions make no difference. The Constitution's standing requirements don't depend on geographic or temporal proximity. Rather, *Lujan* and *Doe* stand for the proposition that in the absence of an allegation of an actual, specific intent to act—whether near or far, soon or later—a Plaintiff hasn't alleged a cognizable injury.

That's true even when (as here) the alleged injury is access to a book in a public school library. *See Am. Civ. Liberties Union of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*, 557 F.3d 1177, 1196 (11th Cir. 2009). Analyzing the ACLU's argument in that case, the Eleventh Circuit in *Miami-Dade* rejected the same argument that Plaintiffs recycle here:

> The imminence requirement does not depend on the burden to taking some action that will be prevented by the alleged injury--going to Egypt or Sri Lanka in Lujan or going to the school library in this

6

case. Instead, it depends on the imminence of the action, regardless of how much effort that action takes. A trip to Egypt that is planned for the next week would be more imminent than a trip to a school library when it reopens in a few months. There is no good reason that the specificity of a statement that is acceptable should vary inversely with the difficulty of engaging in the activity that is threatened by the alleged injury. Intricate drafting is not required to describe a threatened injury. Plain English and clear language work best. There is either an imminent injury or there is not. If there is not, there is no standing. If there is an imminent injury, then there may be standing. **All the plaintiff has to do is describe the threatened injury and specify why it is imminent. The penalty for failing to do so is dismissal for lack of standing**."

*Id*. at 1197 (emphasis added). Like in *Lujan* and *Miami-Dade*, all that the Plaintiffs had to do here was specify why the alleged injury is imminent. They have failed to do so at every turn.

### D. Plaintiffs tacitly concede that their alleged curricular injury is not traceable to the District or redressable by the Court.

Plaintiffs have not alleged any personal, concrete, particularized injury caused by the District's removal of *Stamped* as an optional classroom text or redressable by the relief they seek. Plaintiffs do not allege in the Complaint that any of their minor children are in tenth or eleventh grade or are enrolled in English 3 at D.W. Daniel High School, where *Stamped* was at one time used by at least one teacher as an optional, supplemental text. (*See* Compl. ¶¶ 46–48 (alleging generally that *Stamped* was at one time used as a supplemental text in English 3 at one high school in the District).[1]) That failure of pleading should be the end of the road for Plaintiffs' curricular claim. *Harty*, 2012 WL 264688 at *4 ("[L]ater-submitted evidence cannot correct insufficient pleading in Plaintiff's complaint.").

Plaintiffs attempt to salvage their claim by arguing that they have sufficiently alleged through supplemental declarations that *Stamped* is assigned in two of Plaintiffs' children's

---

[1] *See also* Pl.s' Mem. in Supp. of Mot. for PI at 26 (ECF No. 7-1) ("Stamped was assigned reading in at least *one* English III classroom in the District[.]") (emphasis added).

7

classrooms next year. (*See* ECF No. 24 at 8.) But even if the Court considers Plaintiffs' declarations and supplemental declarations, they *still* do not remedy the deficiency of the Complaint. That's because the supplemental declarations don't say what Plaintiffs claim. Yes, Plaintiffs assert that two of their minor children will be enrolled in the course English 3 at D.W. Daniel High, but they don't allege specifically that they'll be in one of the classrooms with an English 3 teacher who has or will use *Stamped* as a companion text. To the contrary, neither of the children are enrolled in a class with a teacher who used *Stamped* as part of their curriculum last year. (*See* Declaration of Shannon Sharkey ("Sharkey Decl.") ¶¶ 4–7, ECF No. 20-1.) Because those teachers independently chose not to use *Stamped* prior to the District's action, the absence of *Stamped* in their classrooms is not traceable to the District's conduct.

Furthermore, it is speculative to think that those teachers would use the book even if they could. On this point, Plaintiffs train all their fire on the declaration of Professor Bernstein. (*See* Pl.'s Resp. at 8–9, ECF No. 24.) But what's most telling about their argument is what it *doesn't* address. Leaving aside Professor Bernstein's declaration and the question of whether a teacher would assign a book so full of distortions, errors, and omissions, the point that Plaintiffs ignore is that the relief they seek would merely make *Stamped* an **optional** text which may not be assigned in their children's classroom.  This is even more speculative considering that their children's English 3 teachers previously chose ***not*** to use that option even when it was available to them. (*See* Sharkey Decl. ¶¶ 4–7, ECF No. 20-1.)  It is entirely speculative, then, whether the relief Plaintiffs seek would, if granted, redress their injury.

The speculative nature of the relief the seek is not, as Plaintiffs argue, a factual dispute. (*See* Pl.'s Resp. at 7, 9, ECF No. 24.) The District does not dispute Plaintiffs' assertion that some English 3 teachers used *Stamped* in the past. That's true. But not all of the teachers did, and the relevant two teachers here didn't use *Stamped* last year. That's also true, and is not inconsistent

with Plaintiffs' allegations. Likewise, there's no dispute that the relief sought in Plaintiffs' Complaint would merely make *Stamped* an *optional* text again. All of those things can be (and are) true at the same time. Those facts are not disputed. But they still don't answer the question of whether two particular teachers would choose to use *Stamped* even if it were available. Unless the Court is prepared to grant relief the Plaintiffs have not requested and order two teachers to use a particular optional text over all others, this suit will not redress Plaintiffs' alleged curricular injury.

II. **Even if Plaintiffs had standing to assert a claim related to library access, the claim has been mooted by intervening events.**

Even if at the time they filed this suit Plaintiffs had standing to assert a library claim, that claim is now moot. Plaintiffs' high school aged children had library access to *Stamped* on the first day they returned to school this year, and they still have access to it today. Because they already have the thing they seek, their claim is moot. Plaintiffs' attempts to avoid this conclusion fall flat.

A. **Substantial case law confirms that a public school board is legislative in nature, and its decisions are entitled to a presumption of validity.**

Plaintiffs are simply incorrect when they argue that a school board is not a legislative body entitled to rely on the cases cited in the District's Motion to Dismiss. The United States Supreme Court, the Fourth Circuit, the courts in South Carolina, and other jurisdictions have recognized that public school boards are legislative in identity and nature, and their decisions and rules are entitled to a presumption of good faith and validity. *See*, *e.g.*, *Harrah Indep. Sch. Dist. v. Martin*, 440 U.S. 194, 198 (1979) ("The School Board's rule is endowed with a presumption of legislative validity[.]"); *Miramonti v. Richland Cnty. Sch. Dist. One*, 885 S.E.2d 406, 409 (S.C. Ct. App. 2023) (agreeing with school board's argument that it was "a legislative body" and noting that the board's proceedings in its meetings were "legislative action"); *see also Common Cause v. Lewis*, 956 F.3d 246 (4th Cir. 2020) (analogizing school boards to legislative defendants); *Wood v. Strickland*, 420 U.S. 308, 319 (1975), abrogated on other grounds by *Harlow v. Fitzgerald*, 457

U.S. 800 (1982) (noting that "school board members function at different times in the nature of legislators"); *Am. Humanist Ass'n v. McCarty*, 851 F.3d 521, 526 (5th Cir. 2017) ("We agree with the district court that 'a school board is more like a legislature than a school classroom or event.' The BISD board is a deliberative body, charged with overseeing the district's public schools, adopting budgets, collecting taxes, conducting elections, issuing bonds, and other tasks that are undeniably legislative.") (citation omitted); *Gunter v. N. Wasco Cnty. Sch. Dist. Bd. of Ed.*, 577 F. Supp. 3d 1141, 1157 (D. Or. 2021) ("Laws under review, including rules passed by a school board, are presumed valid.") (citation omitted); *State ex rel. Dilley v. W. Va. Pub. Employees Retirement Sys.*, 375 S.E.2d 202, 204 (W. Va. 1988) ("[W]e must conclude that boards of education are the 'legislative body' of 'a school corporation.' . . . Ordinarily one does not think of a school board as a 'legislative body,' but at the same time one also ordinarily does not think of a school corporation as a 'political subdivision.' Certainly if a school corporation is a political subdivision, then the school board is its legislative body.").[2] Thus, the Board here is entitled to a presumption of validity under relevant and applicable caselaw.

### B. Plaintiffs' speculation about hypothetical local members of the NAACP is insufficient to avoid mootness.

Additionally, Plaintiffs cannot evade the mootness of their claim by speculating that perhaps the NAACP has members who are children whose parents won't let them check out *Stamped*. (*See* Pl.s' Resp. at 12, ECF No. 24.) Plaintiffs have never alleged that the NAACP has members who are students or parents of students who specifically intend or plan to check out *Stamped* from the District's libraries, much less that they represent students who have not received

---

[2] This reasoning applies in South Carolina, too, as public school districts are political subdivisions of the state. *See*, *e.g.*, S.C. Code Ann. § 1-6-10(5) ("'Political subdivision' includes a . . . school district"); *id.* § 6-1-130(A) ("For purposes of this section 'political subdivision' includes, but is not limited to a . . . school district"); *id.* § 11-35-310(24) ("'Political subdivision' means all . . . school districts").

10

*permission* to check out *Stamped*. Rather, Plaintiffs have alleged that the NAACP represents members and children of members who attend school in the District. (*See* Declaration of Shelia D. Crawford ("Crawford Decl.") ¶ 3 (" The Pickens NAACP represents members and children of members who attend school throughout the School District of Pickens County, including D.W. Daniel High School, Pickens High School, Liberty High School, and Easley High School, among others.") This is not enough to meet their burden.

### C. Well-established precedent recognizes parents' authority and control over the education of their children, and the District's accommodation of that right cannot constitute an injury.

Plaintiffs argue that a requirement of parental permission is *itself* an injury. (*See* Pl.s' Resp. at 9, 12, ECF No. 24 (citing *Counts v. Cedarville Sch. Dist.*, 295 F.Supp. 2d 996, 999 (W.D. Ark. 2003).) But long-standing, well-established case law rebut this argument and the 20-year-old, out-of-Circuit case it relies on.

The Supreme Court and lower courts have long recognized and upheld the fundamental rights of parents to control the upbringing and education of their children, including in matters related to public schooling. *See*, *e.g.*, *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972); *Pierce v. Society of the Sisters*, 268 U.S. 510, 535 (1925); *Troxel v. Granville*, 530 U.S. 57, 65–66 (2000); *C.N. v. Ridgewood Board of Education*, 430 F.3d 159, 307 (3d Cir. 2005) ("[P]arents, not schools, have the primary responsibility to inculcate moral standards," and "introducing a child to sensitive topics before a parent might have done so herself can complicate and even undermine parental authority"); S.C. Code Ann. § 59-32-50 (mandating that public schools defer to the wishes of students' parents regarding the receipt of certain instructional materials). That's true even when the wishes of the parent and child differ regarding the student's expressive activities at school:

> The rights of students and the rights of parents—two different sets of persons whose opinions can often clash—are the subject of a legislative balance in the statute before us. The State, in restricting

11

> the student's freedom of speech, advances the protection of the constitutional rights of parents: an interest which the State may lawfully protect. . . . And this Court and others have routinely acknowledged parents as having the principal role in guiding how their children will be educated on civic values.

*Frazier v. Winn*, 535 F.3d 1279, 1284–85 (11th Cir. 2008) (upholding Florida statute requiring students to get parental permission before being excused from reciting the Pledge of Allegiance). If, as the foregoing cases hold, the Constitution *requires* parental control over the education of their children, it's hard to see how the District's recognition of that right can be an injury.

    **D.    The Supreme Court and Fourth Circuit have upheld public school programs requiring prior parental permission before a student can access or receive instruction or information.**

Plaintiffs fare no better in their argument that their children are injured by having to seek parental permission in order to opt-in and access certain materials. The Supreme Court and the Fourth Circuit have already held that a student's participation in or receipt of materials or instruction can, and in some instances *must*, be conditioned on prior parental permission to opt-in to the instruction. *See Zorach v. Clausen*, 343 U.S. 306 (1952); *Moss v. Spartanburg Cnty. Sch. Dist. 7*, 683 F.3d 599 (4th Cir. 2012). Both *Zorach* and *Moss* upheld the right of public school students to participate in off-campus devotional religious instruction during the school day (including for academic course credit), but conditioned that right on the requirement of parental consent. Again, if the Supreme Court and the Fourth Circuit held that parental permission to participate was a constitutionally acceptable component of *that* curriculum-adjacent activity, it's hard to see how parental permission could be an *injury* in the analogous context of this case.

    **E.    Plaintiffs' discussion of voluntary cessation misses the mark.**

Plaintiffs argue that their library claim is not moot because the District's restoration of *Stamped* to the high school libraries is a pretextual voluntary cessation. (*See* Pl.s' Resp. at 12–15,

ECF No. 24.)³ Their argument rests in large part on the erroneous premise that a public school board is not a legislative body whose policy changes are presumed to be valid and will moot a pending lawsuit when the policy change has the effect of providing the plaintiff with the prospective relief he sought. (*See supra*, Section II.A; *see also* Mot. to Dismiss at 24–26, ECF No. 21.) When that faulty premise is corrected, Plaintiffs' argument crumbles.

The three cases that Plaintiffs cite in support their voluntary cessation argument don't control the analysis or change the conclusion. (*See* Pl.s' Resp. at 14, ECF 24 (citing *Lowry ex. rel. Crow v. Watson Chapel Sch. Dist.*, 540 F.3d 752 (8th Cir. 2008), *Jager v. Douglas Cty. Sch. Dist.*, 862 F.2d 824 (11th Cir. 1989), and *Hall v. Bd. of Sch. Comm'rs*, 656 F.2d 999 (5th Cir. 1981).) None of them are informative here. *Lowry* only addressed mootness in a footnote about attorneys' fees and gave no holding on voluntary cessation. *See* 540 F.3d at 761 n.8. *Jager*'s mootness analysis rested in part on the defendants' failure to formalize the change as a policy (and, instead, leaving implementation of the change up to individual principals). 862 F.2d at 833–34. And *Hall*'s mootness analysis focused on the fact that the challenged action that the Board had altered was (prior to that alteration) a longstanding practice. 656 F.2d at 1000.

Here, in contrast to *Jager*, the District's reinstatement of *Stamped* in the high school libraries was done through a formal vote by the School Board that was memorialized in written policy documents and which does not leave discretion to individual principals or employees. And unlike in *Hall*, the District's challenged practice—namely the absence of *Stamped* from high school libraries—was a fairly recent and relatively short-lived phenomenon, making it unlikely that the District or the librarians will lapse back into it from force of habit or long years of practice.

---

³ Plaintiffs don't argue that their claim is one that is capable of repetition yet evading review, apparently conceding the District's argument that this is not such a case. (*See* Mot. to Dismiss at 24 –26, ECF No. 21.)

Thus, even if the District's Board were not a legislative body whose decisions are entitled to a presumption of validity (which it is), Plaintiffs still have not shown that there is a substantial likelihood that the offending policy will be reinstated if the suit is terminated.

### III. Plaintiffs have not stated a claim on which relief can be granted.

Plaintiffs have not asserted a viable cause of action related to the District's removal of *Stamped* from the high school curriculum and (before its restoration) from the high school libraries. (Mot. to Dismiss at 26 –33, ECF No. 21.) Plaintiffs' arguments do not alter this analysis.

*First*, Plaintiffs seek to evade the Fourth Circuit's analysis and holding in *Boring v. Buncombe Cnty. Bd. of Educ.*, 136 F.3d 364 (4th Cir. 1998) by arguing that *Boring* was an employee speech case that has no relevance here. Plaintiffs are correct that *Boring* involved a *teacher* claiming a First Amendment right. But that distinction makes no difference because the holding in *Boring* that the District relies on applies equally regardless of who is making the claim. The portion of *Boring* that the District quotes and relies on comes from the section of the opinion that *assumes* the plaintiff had a First Amendment right to the material and still concluded that curriculum selection is an inherently legitimate pedagogical concern of a school. *Id*. at 370. Here too, even assuming that Plaintiffs' students have a First Amendment right to study the topics discussed in *Stamped*, the Board is still within its legitimate pedagogical authority to remove that particular book from the curriculum.

*Second*, Plaintiffs try to justify their reliance on *others'* motivations to impute malign intent to the Board. (*See* Pl.s' Resp. at 17 –20, ECF No. 24.) They argue that this is not speculation, but, instead, is "circumstantial evidence" capable of supporting a claim. (*See id*. (citing *Tobey v. Jones*, 706 F.3d 379 (4th Cir. 2013).) In *Tobey*, the plaintiff alleged the TSA officers retaliated against him for exercising his First Amendment rights to protest airport security screenings. The Fourth Circuit upheld the District Court's denial of defendant's motion to dismiss his First Amendment

14

claim, concluding that—in that set of facts—circumstantial evidence was enough to state a claim. 706 F.3d at 383. But the facts here are different in two critical regards.

One is that the TSA agents and arresting officers in *Tobey* provided no contemporaneous, nondiscriminatory explanation or reason for their actions at the time of the arrest. *Id.* at 390–91. In our case, on the other hand, a Board member did provide a contemporaneous, nondiscriminatory explanation for the vote to remove *Stamped*, namely that the book contained numerous factual inaccuracies. *See* 8/22/22 Board Meeting, https://tinyurl.com/5hwze3y9, at 1:56:18–1:59:23 (Ms. Williams: "I too read the book, most of it . . . I just found error after error after error. Errors of omissions. Errors of commission . . . . What we really need to focus on here is . . . does this material meet the educational rigor that's required for one of the best school systems in our state."). Unlike in *Tobey* where the court relied on circumstantial evidence because there was no other evidence rebutting causation, here the *only* actual evidence of the Board's intentions is nondiscriminatory, and any speculative circumstantial evidence does not sufficiently allege malintent.

The other difference between *Tobey* and this case is that in *Tobey*, the circumstantial evidence was limited to the officers *own* actions—not those of third party onlookers, online commentators, or Members of Congress— even though all those groups of people had and shared opinions publicly over the years about TSA's screening practices. *See Tobey*, 706 F.3d at 387. Here, in contrast, the only basis in the Complaint to impute discriminatory intent to the Board's members is others' comments and motivations, including ones remote in time and distance.

## CONCLUSION

Plaintiffs lack standing, their claim is at least partially moot, and they have not stated a viable claim. The Court should dismiss the Complaint with prejudice.

15

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: /s Miles E. Coleman
 Miles E. Coleman
 Fed. ID No. 11594
 2 West Washington Street, Suite 400
 Greenville, SC 29601
 miles.coleman@nelsonmullins.com
 (864) 373-2300

 *Attorney for School District of Pickens County*

Greenville, South Carolina
August 22, 2023