IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Pickens County Branch of the NAACP; Rebecca Turner, *on behalf of minor children J.T and G.T.*; Brandon Turner, *on behalf of minor children J.T and G.T*; Susanna Ashton, *on behalf of minor children H.L. and C.L.*; Peter Laurence, *on behalf of minor children H.L. and C.L.*; Reba Kruse, *on behalf of minor children S.K. and R.K.*; Derrick Kruse, *on behalf of minor children S.K. and R.K.*,<br><br>                    Plaintiffs,<br><br>          v.<br><br>School District of Pickens County,<br><br>                    Defendant. | Case No. 8:23-cv-01736-JDA<br><br><br><br><br><br>**<u>OPINION AND ORDER</u>** |

This matter is before the Court on Defendant's motion to dismiss Plaintiffs' Complaint pursuant to Rules 12(b)(1), 12(b)(6), and 12(h)(3) of the Federal Rules of Civil Procedure. [Doc. 58.]

Plaintiffs filed a Complaint on April 26, 2023, alleging the School District of Pickens County ("the District") violated the First Amendment by removing the book *Stamped: Racism, Antiracism, and You* ("*Stamped*") from the District's classrooms, libraries, and media centers in an act of viewpoint discrimination. [Doc. 1.] Plaintiffs "seek[ ] an order declaring that the District's removal of [*Stamped*] violates the First Amendment and permanently enjoining the District's unlawful conduct." [*Id.* at 27.]

On June 26, 2023, Plaintiffs moved for a preliminary injunction. [Doc. 7.] The Court denied the motion via Text Order for reasons stated on the record during a hearing on the motion. [Doc. 17; *see also* Doc. 18.] Plaintiffs appealed the decision to the Fourth Circuit, arguing this Court's findings were inadequate to facilitate appellate review. [Doc. 27]; *Pickens Cnty. Branch of NAACP v. Sch. Dist. of Pickens Cnty.*, No. 23-1871, Doc. 11-1 (4th Cir. Sept. 14, 2023). The Fourth Circuit summarily vacated this Court's Order and remanded the case for further proceedings. [Doc. 35.]

On July 25, 2023, Defendant filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim. [Doc. 21.]

This case was reassigned to the undersigned on February 13, 2024. [Doc. 44.] The Court subsequently denied Plaintiffs' motion for preliminary injunction [Doc. 7] and Defendant's motion to dismiss [Doc. 21] with leave to refile. [Doc. 53.]

On October 28, 2024, Defendant filed a renewed motion to dismiss for lack of jurisdiction, mootness, and failure to state a claim. [Doc. 58.]. The parties have filed a response, a reply, and supplements concerning the motion [Docs. 60; 65; 67; 68; 69; 70; 71], and the motion is now ripe for review.

For the reasons stated herein, the Court grants Defendant's motion to dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(1) and dismisses the action without prejudice.

## BACKGROUND[1]

### *Stamped: Racism, Antiracism, and You*

*Stamped* is a young-adult book authored by Ibram X. Kendi and Jason Reynolds "chronicl[ing] the history of racist ideas in America." [Doc. 1 ¶ 21.] The book does not purport to present an unbiased account of history; rather, "*Stamped* is history filtered through a specific lens—the development, expansion, and influence of racist thought." [*Id.* ¶ 29.]

"Following its publication in 2020, [*Stamped*] was used as a companion text by English 3 (junior level American Literature) classes at D.W. Daniel High School—one of three high schools in the District." [*Id.* ¶ 46.] Teachers who elected to use *Stamped* in their classrooms "notified parents, explained the purpose of the book's inclusion in the curriculum, and provided students and parents an opportunity to opt out of the reading . . . ." [*Id.* ¶ 48.] In addition, *Stamped* was available as a library and media center resource at D.W. Daniel High School and Pickens High School. [*Id.* ¶ 150.]

### The District's Removal Decision

In August 2022, three parents challenged the use of *Stamped* at D.W. Daniel High School. [*Id.* ¶ 81; *see also id.* ¶¶ 63–65.] D.W. Daniel High School convened a committee to resolve the challenges. [*Id.* ¶ 85; *see also id.* ¶¶ 66–70.] The committee "unanimously agreed that 'this text is developmentally appropriate for high school students to analyze accuracy, tone, argument, and bias,' and recommended that *Stamped* 'should remain as

---

[1] The following Background derives from Plaintiffs' Complaint, Plaintiffs' motion for preliminary injunction and associated briefing, and the parties' joint status report dated October 21, 2024. [Docs. 1; 7; 9; 13; 20; 39; 43; 55.]

a resource available to students at Daniel High School, whether in a classroom or on a bookshelf.'" [*Id.* ¶ 88.]

One of the original complainants appealed the decision of the committee, arguing *Stamped* violated Budget Proviso 1.105.[2] [*Id.* ¶¶ 90–91.] In response, the superintendent convened a district-level review committee to make a recommendation to the Board of Trustees (the "Board"). [*Id.* ¶ 92; *see also id.* ¶¶ 71–80.] The committee unanimously concluded *Stamped* constituted "an appropriate classroom, library, and media center resource at District high schools." [*Id.* ¶ 95.]

On August 22, 2022, the Board held a monthly meeting and received public comments pertaining to *Stamped*. [*Id.* ¶¶ 97–98.] "Many commenters opposed the ideas contained in *Stamped* . . . ." [*Id.* ¶ 99.] A few days later, "the Board heard additional public comments and received the findings of the [d]istrict-level book review committee." [*Id.* ¶ 107.] Despite the district-level review committee's unanimous approval of the book's suitability, a Board member moved to remove *Stamped* from all schools in the District for a period of five years. [*Id.* ¶ 112.] By a vote of 7-0, the Board approved a five-year ban of *Stamped*. [*Id.* ¶ 120.]

**This Action**

Plaintiffs filed this action on April 26, 2023, arguing "[t]he Board's decision to remove *Stamped* was not based on any legitimate curricular motivation" but was instead

---

[2] The proviso in question appears as Budget Proviso 1.93 in the 2022–23 budget. [Doc. 1 ¶ 137.] The proviso prohibits school districts from using materials that "serve to inculcate" certain concepts, such as the belief that "one race or sex is inherently superior to another race or sex." [*Id.* ¶ 139 (internal quotation marks omitted).]

based on "the Board's hostility to the opinions contained in the book." [*Id.* ¶¶ 129, 144; *see also id.* ¶ 154.]

The Pickens County Branch of the NAACP ("Pickens NAACP") alleges it "represents members and children of members who want to check out or otherwise access [*Stamped*] in their school libraries, media centers, or classrooms. [*Id.* ¶ 146.] Moreover, Pickens NAACP alleges the District "has frustrated NAACP's mission [to achieve equity, political rights, and social inclusion] and prevented the members and children of members who the Pickens NAACP represents from accessing the book and engaging in subsequent conversation." [*Id.* ¶ 148.]

Individual Plaintiffs Rebecca Turner and Brandon Turner, on behalf of their minor children J.T. and G.T.; Susanna Ashton and Peter Laurence, on behalf of their minor children H.L. and C.L.; and Reba Kruse and Derrick Kruse, on behalf of their minor children S.K. and R.K., allege similar harms. [*Id.* ¶ 149.] Specifically, "J.T., G.T., H.L., and C.L. each either currently attend or will attend D.W. Daniel High School, where [*Stamped*] was . . . available as a library and media center resource and taught as part of the English 3 curriculum." [*Id.* ¶ 150.] Likewise, "S.K. and R.K. currently attend Pickens High School, another District High School where *Stamped* was available to students until Defendant's action." [*Id.*]

**Evidence Extrinsic to the Pleadings**

On June 26, 2023, Shelia D. Crawford submitted a declaration on behalf of Pickens NAACP. [Doc. 7-2.] Crawford related the NAACP's mission "to achieve equity, political rights, and social inclusion by advancing policies and practices that expand human and civil rights, eliminate discrimination, and accelerate the well-being, education, and

economic security of Black people and all people of color." [*Id.* ¶ 2 (internal quotation marks omitted).] In addition, she confirmed Pickens NAACP "represents members and children of members who attend school throughout the School District of Pickens County, including D.W. Daniel High School, Pickens High School, Liberty High School, and Easley High School, among others." [*Id.* ¶ 3.] She asserted that Pickens NAACP's members suffered harm because the District's removal of *Stamped* from all classrooms and libraries in the District deprived them of "their right to receive information, to enjoy academic freedom, and to engage in discussion, debate, and dialogue about the ideas expressed in *Stamped*." [*Id.* ¶ 7.]

Plaintiff Rebecca Turner submitted a declaration on behalf of her minor children on June 23, 2023. [Doc. 7-3.] At the time of the declaration, Ms. Turner's child J.T. was a rising tenth-grade student at D.W. Daniel High School, and her child G.T. was a rising eighth-grade student at R.C. Edwards Middle School and planned to attend D.W. Daniel High School in ninth grade. [*Id.* ¶¶ 2–3.] She alleged "[t]he District's removal of *Stamped* directly harm[ed] [her] minor children . . . who ha[d] been deprived of their right to receive information through the ideas, opinions, and viewpoints in *Stamped*." [*Id.* ¶ 4.]

In an additional declaration dated July 14, 2023, Ms. Turner averred J.T. was "enrolled in Honors English III . . . for the 2023–2024 school year," which was "the same class that ha[d] used [*Stamped*] as part of the curriculum since 2020." [Doc. 13-2 ¶¶ 3– 4.] However, the District's Associate Superintendent of Academic Services countered that "[t]he teacher for the English 3 class that J.T. [wa]s enrolled in [that] Spring [ha]d not use[d] *Stamped* as part of their curriculum [the previous] year," and "[t]he teacher's decision not to use *Stamped* as an optional, supplemental text in the Fall semester of [the

previous] year was independent of and predated the School Board's subsequent decision regarding the use of the book in the District." [Doc. 20-1 ¶ 5.]

Plaintiff Peter Laurence submitted a declaration on behalf of his minor children on June 26, 2023. [Doc. 7-4.] At the time of the declaration, Mr. Laurence's child H.L. was a rising tenth-grade student at D.W. Daniel High School, and his child C.L. was a rising eighth-grade student at R.C. Edwards Middle School and planned to attend D.W. Daniel High School in ninth grade. [*Id.* ¶¶ 2–3.] He stated that "[t]he District's removal of *Stamped* directly harm[ed] [his] minor children . . . who would otherwise have [had] the opportunity to be exposed to the ideas, opinions, and viewpoints expressed in *Stamped* in an English classroom at D.W. Daniel High School and through independent study by checking out *Stamped* from the school library." [*Id.* ¶ 4.]

In an additional declaration dated July 14, 2023, Mr. Laurence averred H.L. was "enrolled in Honors English III . . . for the 2023-2024 school year," which was "the same class that ha[d] used [*Stamped*] as part of the curriculum since 2020." [Doc. 13-1 ¶¶ 3–4.] However, the District's Associate Superintendent of Academic Services countered that "[t]he teacher for the English 3 class that H.L. [wa]s enrolled in [wa]s new to Daniel High School" and had "not used *Stamped* as part of their curriculum in past years at previous schools." [Doc. 20-1 ¶ 7.]

Plaintiff Reba Kruse also submitted a declaration dated June 23, 2023, on behalf of her minor children. [Doc. 7-5]. At the time of the declaration, Ms. Kruse's child S.K. was a rising twelfth-grade student at Pickens High School, and her child R.K. was a rising tenth-grade student at Pickens High School. [*Id.* ¶¶ 2–3.] She alleged the District's decision to ban *Stamped* directly harmed her children because they lost "the opportunity

for classroom discussion . . . with an experienced, qualified instructor" and "self-guided exploration of the ideas in the book through a classroom or school library."  [*Id.* ¶¶ 4, 7–8.]

On July 6, 2023, the Board voted to reinstate *Stamped* in the District's libraries subject to parental consent.  [Docs. 9 at 8; 9-4 ¶ 16; 9-5 ¶ 14; 9-8 ¶ 10; 9-9 ¶ 10; 9-10.] Accordingly, "two copies of [*Stamped*] are now available in the District's high school libraries . . .: one copy at Pickens High School Library and one copy at the Liberty High School Library."  [Doc. 9 at 15; *see also* Doc. 9-2 ¶ 5.]  "Students at other high schools within the District may request an intra-District Library loan through the librarian for [*Stamped*] if it is not available at their own high school."  [Doc. 9 at 15; *see also* Doc. 9-2 ¶ 7.]

Ms. Kruse submitted an additional declaration on December 1, 2023, alleging the following:

> Despite the District's partial reinstatement of *Stamped* to District libraries, my children are still denied access to *Stamped*.  On December 1, 2023, my minor child, S.K., attempted to check out a copy of *Stamped* from the Pickens High School library and was told by a librarian that the book was no longer available at the library.

[Doc. 39-1 ¶ 11.]  Likewise, Ms. Turner stated,

> Although the District claims to have partially reinstated *Stamped* to the school libraries, at this time the book is still not available in the school library.  On December 1, 2023, my minor child, J.T., attempted to check out a copy of *Stamped* and discovered that the book is not available in the library catalogue.

[Doc. 39-2 ¶ 10.]  Finally, Mr. Laurence stated,

> On December 1, 2023, my child, H.L. attempted to check out *Stamped* from the school library at D.W. Daniel High School.

> The person working in the library checked the library catalog
> and informed H.L. that the school did not have *Stamped*.

[Doc. 39-3 ¶ 9.]

On December 15, 2023, the District's Assistant Superintendent for Technology Services submitted a declaration averring that only one District student—excepting Plaintiffs' minor children—had asked a high school librarian about *Stamped*'s availability from July 10, 2023 to December 1, 2023. [Doc. 43-1 ¶ 6.] "In that instance, the librarian at Liberty High School responded by explaining the parental permission requirement and by giving the student a hard copy of the parental permission form to take home for parental signature . . . ." [*Id.*] Moreover, in a declaration dated December 15, 2023, the D.W. Daniel High School Media Specialist confirmed speaking to H.L. and J.T. individually on December 8, 2023, to inform them that *Stamped* was "not in Daniel High School's library collection" but could nevertheless be "requested through an intra-District Library Loan" with parental consent. [Doc. 43-2 ¶¶ 11–12.] The media specialist then provided H.L. and J.T. with parental permission forms. [*Id.* ¶ 13.] Likewise, in a declaration dated December 15, 2023, the Pickens High School Media Specialist reportedly informed S.K. she could not check out *Stamped* because she "did not present or request a parental permission form." [Doc. 43-3 ¶ 5.] Subsequently, S.K. returned to school with a completed permission form and checked out *Stamped* on December 7, 2023. [*Id.* ¶ 8.]

On October 21, 2024, the parties filed a joint status report updating the Court on material developments. [Doc. 55.] As an initial matter, the six minor children on whose behalf the case was brought "are now a year and a half older and two grade levels higher than when they filed the case." [*Id.* at 3.] In addition, "the South Carolina Board of Education adopted a statewide policy governing the selection, review of, and challenges

to books and other instructional material in the state's public schools." [*Id.*]; *see* S.C. Code of Regs. 43-170 ("Uniform Procedure for Selection or Reconsideration of Instructional Materials"). "To the District's knowledge, the book *Stamped* has not yet been challenged or decided in this District or elsewhere under the new statewide standard established by Regulation 43-170." [Doc. 55 at 3.]

**The District's Motion to Dismiss**

On October 28, 2024, the District filed a motion to dismiss for lack of jurisdiction, mootness, and failure to state a claim. [Doc. 58.] First, the District argues Plaintiffs lack standing because "[t]he mere *possibility* that some of [Plaintiffs'] children *might* read *Stamped* as an optional, supplemental text in English class or that they *might* want to check the book out from the high school library someday cannot satisfy their burden" of alleging a sufficient injury that is redressable. [*Id.* at 7; *see also id.* at 24–29.] Second, the District contends Plaintiffs' claim regarding the book's library availability is moot "because the Board subsequently modified that decision, and the book *is* available to Plaintiffs' children in the District's high school libraries." [*Id.* at 7–8; *see also id.* at 29–31.] Finally, the District contends Plaintiffs' Complaint fails to state a claim for relief because "the selection, curation, and management of public-school curricula and library materials are government speech not protected by the Free Speech Clause." [*Id.* at 8; *see also id.* at 32–40.]

Plaintiffs filed a response in opposition on November 18, 2024. [Doc. 60.] First, Plaintiffs contend the District's decision to remove *Stamped* from classrooms and libraries causes an actual and continuous injury to Plaintiffs, not an indeterminate future injury. [*Id.* at 4–5; *see also id.* at 8–15.] Second, Plaintiffs argue the District's partial

reinstatement of *Stamped* in school libraries does not render Plaintiffs' claims moot, as the "parental-consent requirement still infringes on Plaintiffs' First Amendment rights" and the Complaint's request for a retrospective declaration and associated nominal damages "precludes a finding of mootness." [*Id.* at 5–6; *see also id.* at 15–19.] Finally, Plaintiffs claim the Complaint "plausibly allege[s] that the District violated the First Amendment." [*Id.* at 7 (emphasis omitted); *see also id.* at 19–31.] As noted, the District filed a reply on December 16, 2024 [Doc. 65], the parties filed supplements [Docs. 67; 68; 69; 70; 71], and the motion is now ripe for review.

## **APPLICABLE LAW**

**Rule 12(b)(1)**

Article III limits a federal court's jurisdiction to cases and controversies.[3] U.S. Const. art. III, § 2. Accordingly, a motion to dismiss under Rule 12(b)(1) examines whether the complaint fails to state facts upon which jurisdiction can be founded. Fed. R. Civ. P. 12(b)(1); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). The court may dismiss a case for lack of subject matter jurisdiction on any of the following bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced

---

[3] The Court notes that a case or controversy is also specifically required for courts to resolve a declaratory judgment action, as the statutes comprising the Declaratory Judgment Act authorize federal courts to "declare the rights and other legal relations of" interested parties "[i]n a case of *actual controversy* within its jurisdiction." 28 U.S.C. § 2201 (emphasis added); *see Delavigne v. Delavigne*, 530 F.2d 598, 601 (4th Cir. 1976) ("[T]he [Declaratory Judgment] Act does not supply its own jurisdictional base, and where jurisdiction is lacking, declaratory relief should be denied."). And plaintiffs seeking declaratory relief must identify "some further concrete relief that will likely result from the declaratory judgment." *Comite de Apoyo a los Trabajadores Agricolas (CATA) v. U.S. Dep't of Lab.*, 995 F.2d 510, 513 (4th Cir. 1993).

in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Johnson v. United States*, 534 F.3d 958, 962 (8th Cir. 2008) (internal quotation marks omitted).

Generally, challenges to jurisdiction under Rule 12(b)(1) may be raised facially or factually. *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). "In a facial challenge, the defendant contends that the complaint fails to allege facts upon which standing can be based, and the plaintiff is afforded the same procedural protection that exists on a motion to dismiss." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (cleaned up). That is, "[t]he allegations in the complaint are taken as true, and materials outside the pleadings are not considered." *Thigpen v. United States*, 800 F.2d 393, 401 n.15 (4th Cir. 1986) (Murnaghan, J., concurring), *overruled on other grounds by Sheridan v. United States*, 487 U.S. 392 (1988). In a factual challenge, the defendant contends "there is in fact no subject matter jurisdiction, even if the pleadings are formally sufficient," *Silha v. ACT, Inc.,* 807 F.3d 169, 173 (7th Cir. 2015) (emphasis omitted), and the court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment," *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). "Unless the jurisdictional facts are intertwined with the facts central to the merits of the dispute, the district court may . . . resolve the jurisdictional facts in dispute by considering evidence outside the pleadings, such as affidavits." *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009) (internal quotation marks omitted).

Regarding the present Rule 12(b)(1) challenge, the District appears to attack both the sufficiency of Plaintiffs' Complaint and the underlying veracity of certain factual

allegations contained therein.  As such, "the [C]ourt will take as true the facts alleged in the Complaint when addressing Defendant's facial challenges, but [it] may consider matters outside the pleadings in addressing Defendant's factual challenge[s]."  *Nsiah v. U.S. Customs & Border Prot.*, 1:24-cv-01243-JRR, 2024 WL 4956226, at *2 (D. Md. Dec. 3, 2024).

### Standing

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).

"The party attempting to invoke federal jurisdiction bears the burden of establishing standing."  *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006).  Moreover, "[a] plaintiff must demonstrate standing with the manner and degree of evidence required at the relevant stage of the litigation."  *Fernandez v. RentGrow, Inc.*, 116 F.4th 288, 295 (4th Cir. 2024) (cleaned up).  "Standing is not dispensed in gross"; instead, "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought."  *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (cleaned up).

### Mootness

While "standing is measured at the time suit is filed," *Columbia Cas. Co. v. McCabe Trotter & Beverly, PC*, No. 2:20-cv-3680-DCN, 2021 WL 2337188, at *3 (D.S.C. June 8, 2021), "[m]ootness has been described as the doctrine of standing set in a time frame:

The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)," *Arizonans for Off. English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (internal quotation marks omitted). *But see Friends of the Earth, Inc.*, 528 U.S. at 180 (noting some differences between standing and mootness). The doctrine of mootness prevents courts "from advising on legal questions when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Eden, LLC v. Justice*, 36 F.4th 166, 169 (4th Cir. 2022) (internal quotation marks omitted). In other words, "federal courts may not opine on the merits of a case when doing so would have no practical effect on the outcome of the matter." *Holloway v. City of Va. Beach*, 42 F.4th 266, 275 (4th Cir. 2022) (internal quotation marks omitted). This limit applies "throughout the course of litigation, to the moment of final appellate disposition." *Catawba Riverkeeper Found. v. N.C. Dep't of Transp.*, 843 F.3d 583, 588 (4th Cir. 2016) (internal quotation marks omitted).

**Rule 12(b)(6)**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim should be dismissed if it fails to state a claim upon which relief can be granted. When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the [petition] in a light most favorable to the [petitioner]." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the [petition's] allegations and those documents attached as

exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985).

With respect to well-pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the [respondent] fair notice of what the . . . claim is and the grounds upon which it rests." While a [petition] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a [petitioner's] obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the [petition] are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more ... than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the [petitioner] pleads factual content that allows the court to draw the reasonable inference that the [respondent] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show

15

he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557; *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)). Accordingly, the plausibility standard requires a petitioner to articulate facts that, when accepted as true, demonstrate that the petitioner has stated a claim that makes it plausible the petitioner is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

## DISCUSSION

Because standing constitutes a threshold matter, the Court will address it first. *See Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 921 (4th Cir. 2022). Standing is "[t]he requisite personal interest that must exist at the commencement of the litigation." *Friends of the Earth, Inc.*, 528 U.S. at 189. Accordingly, "standing must exist at the time suit is filed." *Equal Access Educ. v. Merten*, 325 F. Supp. 2d 655, 667 (E.D. Va. 2004).

"To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (internal quotation marks omitted). For an injury to be concrete, the Supreme Court has "emphasized repeatedly" that it "must be concrete in both a qualitative and temporal sense. The complainant must allege an injury to himself that is distinct and palpable, as opposed to merely abstract." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (cleaned up). Likewise, "[f]or an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339 (internal quotation marks omitted).

16

Assuming injury-in-fact, a plaintiff must next show his injury is fairly traceable to the defendant's conduct and redressable by the court. *Uzuegbunam v. Preczewski*, 592 U.S. 279, 282 (2021) ("To demonstrate standing, the plaintiff must not only establish an injury that is fairly traceable to the challenged conduct but must also seek a remedy that redresses that injury."); *FDA v. All. for Hippocratic Med.,* 602 U.S. 367, 381 (2024) ("If a defendant's action causes an injury, enjoining the action or awarding damages for the action will typically redress that injury."); *see also Massachusetts v. E.P.A.,* 549 U.S. 497, 543 (2007) (Roberts, C.J., dissenting) ("As is often the case, the questions of causation and redressability overlap."). That is, it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc.*, 528 U.S. at 181. "The burden imposed by this requirement is not onerous. Plaintiffs need not show that a favorable decision will relieve [their] every injury. Rather, plaintiffs need only show that they personally would benefit in a tangible way from the court's intervention." *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 189 (4th Cir. 2018) (cleaned up). Declaratory and injunctive relief are appropriate to redress ongoing or future harm. *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 407–08 (6th Cir. 2019).

**Plaintiffs' Library Access Claim**

Regarding the Individual Plaintiffs' library access claim, neither the Complaint alone nor the Complaint supplemented by extrinsic evidence sufficiently alleges an injury-in-fact. Plaintiffs contend the District's removal of *Stamped* from high school libraries caused an actual and continuous injury to their right to access information. [Doc. 60 at 4–5; *see also id.* at 8–15.] To this end, Plaintiffs insist "a plaintiff's allegation that [he or

she desires] access to [a] removed book" is "enough to confer standing" [*id*. at 11], and they maintain "[e]ach Individual Plaintiff here has sworn that their children have a specific desire to access *Stamped* in their school library" [*id.* at 10 (citing Docs. 7-3 ¶ 7; 7-4 ¶ 6; 7-5 ¶ 8)].

The Court locates no such "specific desire" in the Complaint or Plaintiffs' cited declarations; instead, those documents merely establish Plaintiffs' minor children were denied a general opportunity—desired or not—to access *Stamped*. [*See* Doc. 1 ¶ 150 ("J.T., G.T., H.L., and C.L. each either currently attend or will attend D.W. Daniel High School, where [*Stamped*] was . . . available as a library and media center resource . . . . S.K. and R.K. currently attend Pickens High School, another District High School where *Stamped* was available to students until Defendant's action. But because of Defendant's unconstitutional removal of *Stamped*, these minor children are being denied their First Amendment right to access that information at D.W. Daniel High School and Pickens High School."); Doc. 7-3 ¶ 7 ("But for the District's censorship, my children would have the opportunity to be exposed to the ideas, opinions, and viewpoints [in *Stamped*] . . . through independent study by checking out *Stamped* from the school library."); Doc. 7-4 ¶ 6 ("The District's action has also deprived my children from being able to access *Stamped* in the school library."); Doc. 7-5 ¶ 8 ("My children are also denied access to self-guided exploration of the ideas in the book through a . . . school library.").]

Courts routinely require more. In the book-removal context, the injury-in-fact inquiry appears satisfied only where the plaintiff(s) (1) took concrete steps to access the restricted material in the past and/or (2) articulated a concrete plan or desire to access the restricted material in the future. *Compare ACLU of Fla., Inc. v. Miami-Dade Cnty Sch.*

*Bd.*, 557 F.3d 1177, 1194 (11th Cir. 2009) (concluding a plaintiff-parent alleged an injury-in-fact on behalf of his minor son where he declared he and his son "had planned to check . . . out" the removed book from the school library and "[would] not be able to do so when school resume[d] on August 14, 2006"), *and Little v. Llano Cnty.*, No. 1:22-cv-424-RP, 2023 WL 2731089, at *5 (W.D. Tex. Mar. 30, 2023) (finding plaintiffs demonstrated injury-in-fact where they "alleged that they [we]re library users and members, that they wish[ed] to check out the removed library books, and that they ha[d] attempted and failed to check out the removed books from the library"), *rev'd on other grounds*, 138 F.3d 834 (5th Cir. 2025) (en banc), *and Parnell v. Sch. Bd. of Lake Cnty., Fla.*, 731 F. Supp. 3d 1298, 1307 (N.D. Fla. 2024) ("Plaintiffs allege B.G. sought to check out [a removed book]—and asked her father about doing so—around March 2023. A fair inference from this is that she would borrow the book if it again became available.") (citation omitted), *and PEN Am. Ctr., Inc. v. Escambia Cnty. Sch. Bd.,* 711 F. Supp. 3d 1325, 1329 (N.D. Fla. 2024) ("The Parent Plaintiffs have standing—at least on behalf of their minor children—because the amended complaint alleges that the children intended to check out specific removed and restricted books during the upcoming (now, ongoing) school year, but they are unable to do so because of Defendant's removal/restriction decisions.") (cleaned up), *and Penguin Random House LLC v. Gibson,* No. 6:24-cv-1573-CEM-RMN, 2025 WL 2408178, at *4 (M.D. Fla. Aug. 13, 2025) ("Parent Plaintiffs sue on behalf of their minor children who have tried to access books that were removed from their school libraries, alleging a violation of the right to receive information . . . . [H]ere, the parents have identified removals of specific books that their children sought to access."), *with ACLU of Fla., Inc.,* 557 F.3d at 1196 (declining to find standing where the plaintiffs' declarations "merely

establish[ed] a free-floating desire to access the [removed books], a desire untethered to any intended action during any reasonably specific period of time"); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563–64 (1992) (concluding affidavits "d[id] not support a finding of the 'actual or imminent' injury" required for standing absent "any description of concrete plans").[4]

Without a declaration establishing Plaintiffs' desire to access *Stamped* and linking that desire to a particular time or context, the Court concludes that the injury-in-fact requirement is not satisfied. *See Whitmore*, 495 U.S. at 155 ("[Plaintiff's] injury, we have emphasized repeatedly, must be concrete in both a qualitative and temporal sense."). Therefore, the Court grants the District's motion to dismiss the Individual Plaintiffs' library access claim.[5]

---

[4] Plaintiffs argue the injury-in-fact element of standing is relaxed in First Amendment cases. [Doc. 60 at 9 (citing *Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013); *Lopez v. Candaele*, 630 F.3d 775, 781 (9th Cir. 2010)).] As an initial matter, Plaintiffs' cited cases concern pre-enforcement challenges to statutes penalizing speech, not book removals. And in any case, "courts may not assign [standing] as a rubber stamp." *Justice 360 v. Stirling*, 42 F.4th 450, 458 (4th Cir. 2022) (internal citations omitted).

[5] Plaintiffs point to evidence outside the pleadings demonstrating at least three Individual Plaintiffs attempted to check out *Stamped* from the school library on December 1, 2023, after the District reinstated *Stamped* subject to parental consent. [Docs. 39-1 ¶ 11; 39-2 ¶ 10; 39-3 ¶ 9.]

Crucially, however, the Court must assess standing *at the time the complaint was filed*. *See Lujan*, 504 U.S. at 569 n.4. As such, the Court cannot read standing into the Complaint after the fact. *See Texas v. Travis Cnty.*, 272 F. Supp. 3d 973, 978 (W.D. Tex. 2017) ("The general rule is that standing is to be determined as of the commencement of the suit. Though a plaintiff may later amend her complaint, post-filing events generally cannot cure a jurisdictional defect that existed at the time the original complaint was filed.") (cleaned up); *Arena v. Graybar Elec. Co.*, 669 F.3d 214, 218 (5th Cir. 2012) ("Although 28 U.S.C. § 1653 and [Rule] 15(a) allow amendments to cure defective jurisdictional allegations, these rules do not permit the creation of jurisdiction when none existed at the time the original complaint was filed[.]").

Organizational Plaintiff Pickens NAACP fares no better. An organizational plaintiff may satisfy the standing requirements of Article III via organizational standing or associational standing. *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005). Pursuant to organizational standing, an organizational plaintiff has standing to redress injuries directly inflicted on the organization. *Id.* Pursuant to associational standing, an organizational plaintiff has standing to sue as a representative for one of its members to seek redress for the member's injury.[6] *Id*.

A "concrete and demonstrable injury to [an] organization's activities—with the consequent drain on the organization's resources—constitutes [organizational standing]." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *see also FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024) (holding plaintiffs, medical advocacy associations that incurred costs opposing the FDA's actions related to a certain prescription medication, lacked organizational standing to challenge the FDA's regulation of the medication because "an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money

---

[6] The United States Supreme Court has suggested that standing as a representative of an organization's members is known as "representational standing or organizational standing." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023). However, to maintain consistency and avoid confusion with the organizational standing versus associational standing distinction used in this case, the Court will maintain the nomenclature traditionally used by courts within this Circuit. *See, e.g., People for Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of W. Md., Inc.*, 843 F. App'x 493, 495 (4th Cir. 2021) (stating that an organization "can assert standing in its own right to seek judicial relief for injury to itself ... [which is] referred to as organizational standing"); *White Tail Park*, 413 F.3d at 459 n.3 ("We have generally labeled an organization's standing to bring a claim on behalf of its members 'associational standing.' "); *Defs. of Wildlife v. Boyles*, 608 F. Supp. 3d 336, 342 (D.S.C. 2022). Thus, as used here, "organizational standing" refers to an organization's standing based on injuries suffered by the organization itself and "associational standing" refers to standing based on harm suffered by a member whom the organization represents.

to gather information and advocate against the defendant's action"); *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 396 (4th Cir. 2024) (concluding that organizational standing was established when the plaintiffs alleged that the defendant's violations "forced them to divert significantly more of their resources into combatting election fraud in North Carolina, efforts which have frustrated their organizational and voter outreach efforts") (internal quotation marks omitted)).

Regarding organizational standing, the Complaint merely alleges the District "has frustrated NAACP's mission [to achieve equity, political rights, and social inclusion]" by removing *Stamped* from Pickens County classrooms and libraries. [Doc. 1 ¶ 148.] Absent additional facts tending to show Pickens NAACP suffered a concrete depletion of resources, this conclusory allegation is insufficient to confer organizational standing.[7]

The doctrine of associational standing does not concern any direct injury to the organization, but rather allows organizations, when the requirements of associational standing are established, to bring an action on behalf of their members "in a representational capacity," *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 345 (1977), by "assert[ing] the standing of their members," *Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009); *see also United Food & Com. Workers Union Loc. 751 v. Brown Grp.*, 517 U.S. 544, 555 (1996) (observing that the injury-in-fact requirement of the *Hunt* test for associational standing is "an Article III necessity for an association's representative suit"). To establish associational standing, an organization must show

---

[7] Moreover, Shelia D. Crawford's declaration dated June 26, 2023, does not purport to enumerate specific ways in which the District's removal of *Stamped* hindered Pickens NAACP's organizational mission. Rather, the declaration merely states the mission itself. [Doc. 7-2.]

that: (1) its members would otherwise have standing to sue as individuals; (2) the interests at stake are germane to the group's purpose; and (3) neither the claim made nor the relief requested requires the participation of individual members in the suit. *Hunt*, 432 U.S. at 343.

Pickens NAACP fails to allege any of its members would have standing to sue as individuals. As with the Individual Plaintiffs, neither the Complaint nor the supplemental declarations contain allegations indicating Pickens NAACP's members (1) took concrete steps to access the restricted material in the past and/or (2) articulated a concrete plan or desire to access the restricted material in the future. Rather, Pickens NAACP merely alleges that it "represents members and children of members who want to check out or otherwise access [*Stamped*] in their school libraries, media centers, or classrooms" [Doc. 1 ¶ 146] and that the District has "prevented the members and children of members who the Pickens NAACP represents from accessing the book and engaging in subsequent conversation" [*id.* ¶ 148; *see also* Doc. 7-2 ¶ 7 ("The District's removal of *Stamped* from all schools deprives members of the Pickens NAACP from their right to receive information, to enjoy academic freedom, and to engage in discussion, debate, and dialogue about the ideas expressed in *Stamped*.")]. Taken together, Pickens NAACP's allegations "merely establish a free-floating desire to access [*Stamped*], a desire untethered to any intended action during any reasonably specific period of time." *ACLU of Fla., Inc.,* 557 F.3d at 1196. Accordingly, the Court grants the District's motion to dismiss Pickens NAACP's library access claim.

**Plaintiffs' Curricular Access Claim**

Regarding the Individual Plaintiffs' curricular access claim, neither the Complaint alone nor the Complaint supplemented by extrinsic evidence sufficiently alleges an injury-in-fact.  According to the Complaint, "[*Stamped*] was used as a companion text by English 3 (junior level American Literature) classes at D.W. Daniel High School—one of three high schools in the District."  [Doc. 1 ¶ 46.]  Teachers who elected to use *Stamped* in their classrooms "notified parents, explained the purpose of the book's inclusion in the curriculum, and provided students and parents an opportunity to opt out of the reading . . . ."  [*Id.* ¶ 48.]  Moreover, "J.T., G.T., H.L., and C.L. each either currently attend or will attend D.W. Daniel High School, where [*Stamped*] was . . . taught as part of the English 3 curriculum."  [Doc. 1 ¶ 150.]  However, the Complaint does not state that any of the named students were *actually enrolled* in English 3 with a teacher who elected to include *Stamped* in the curriculum.  [*See generally* Doc. 1.]  As such, the Individual Plaintiffs have not adequately alleged they suffered a concrete curricular injury precipitated by the District's removal of *Stamped* from English 3 classrooms.

Plaintiffs' supplemental declarations do not cure the Complaint's failure to plead standing.  Plaintiff Rebecca Turner averred J.T. was "enrolled in Honors English III . . . for the 2023-2024 school year," which was "the same class that has used [*Stamped*] as part of the curriculum since 2020."  [Doc. 13-2 ¶¶ 3–4.]  Likewise, Plaintiff Peter Laurence averred H.L. was "enrolled in the same Honors English III . . . for the 2023-2024 school year," which was "the same class that has used [*Stamped*] as part of the curriculum since 2020."  [Doc. 13-1 ¶¶ 3–4.]  However, the District's Associate Superintendent of Academic Services clarified that the specific teachers for the particular classes that J.T. and H.L.

were enrolled in did *not* use *Stamped* in their curricula prior to the District's removal decision. [Doc. 20-1 ¶¶ 5, 7.] As such, the Individual Plaintiffs have failed to show the District's actions resulted in a curricular injury. *See Roberts v. Madigan*, 921 F.2d 1047, 1051 (10th Cir. 1990) ("Because none of the students involved in this suit were in Mr. Roberts' class at the time this suit was filed, none of the students, and therefore none of their parents, were directly affected by the district's actions in Mr. Roberts' classroom."); *see also Stone v. Trump*, 400 F. Supp. 3d 317, 335 (D. Md. 2019) (noting the court "is permitted to decide disputed issues of fact and weigh the evidence" in a factual challenge to subject matter jurisdiction) (citations omitted). Therefore, the Court grants the District's motion to dismiss the Individual Plaintiff's curricular access claim.

Nor does Pickens NAACP possess organizational or associational standing regarding the curricular access claim. Concerning organizational standing, the Complaint merely alleges the District "has frustrated NAACP's mission [to achieve equity, political rights, and social inclusion]" by removing *Stamped* from Pickens County classrooms and libraries. [Doc. 1 ¶ 148.] Absent additional facts tending to show Pickens NAACP suffered a concrete depletion of resources, this conclusory allegation is insufficient to confer organizational standing.

Regarding associational standing, the Complaint and supplemental declarations contain no allegations that any Pickens NAACP members were enrolled or planned to enroll in a class in which *Stamped* was used as a curricular text; rather, the Complaint merely alleges Pickens NAACP "represents members and children of members who want to . . . access [*Stamped*] in their . . . classrooms." [*Id.* ¶ 146.] Furthermore, the declaration of Shelia D. Crawford dated June 26, 2023, does not contain any statements indicating

Pickens NAACP's members enrolled or planned to enroll in a class in which *Stamped* comprised part of the curriculum. [*See generally* Doc. 7-2.]  Accordingly, the Court grants the District's motion to dismiss Pickens NAACP's curricular access claim because Pickens NAACP has not shown any of its members would have standing to sue as individuals.

## CONCLUSION

For the foregoing reasons, the District's motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is GRANTED and this action is DISMISSED without prejudice.[8]

IT IS SO ORDERED.

s/ Jacquelyn D. Austin
United States District Judge

October 7, 2025
Greenville, South Carolina

---

[8] Because the Court concludes that Plaintiffs lack standing, it declines to address Defendant's alternative arguments for dismissal based on failure to state a claim.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (recognizing that "[w]ithout jurisdiction the court cannot proceed at all in any cause" and "the only function remaining to the court is that of announcing" the lack of jurisdiction "and dismissing the cause" (internal quotation marks omitted)); *O'Leary v. TrustedID, Inc.*, 60 F4th 240, 242 (4th Cir. 2023) (stating that, because the plaintiff alleged no Article III injury, the court could not— and would not—reach the question of whether he had pled facts to state a claim for relief).